# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379

---

| | |
|---|---|
| Appellate Court Caption | KOSS CORPORATION, Plaintiff-Appellant, v. SUJATA SACHDEVA, Defendant (Grant Thornton, LLP, Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0379 |
| Filed | July 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court abused its discretion in dismissing an action alleging negligence and fraud by defendant accounting firm in the audit of plaintiff's business accounts on the ground of *forum non conveniens* based on the finding that Wisconsin was the proper forum where the private interest factors did not favor either party and the public interest factors favored Illinois as a proper forum, especially when a significant amount of plaintiff's allegations were not considered. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-7342; the Hon. Bill Taylor, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Joseph A. Power, Jr., of Power Rogers & Smith, P.C., of Chicago, and Michael J. Avenatti and Alexander L. Conti, both of Eagan Avenatti, LLP, of Newport Beach, California, for appellant.

Linton J. Childs and Brian S. Shull, both of Sidley Austin LLP, of Chicago, Sidley Austin LLP, of New York, New York (Gary F. Bendinger, of counsel), and Robbins, Russell, Engler, Orseck, Untereiner & Sauber LLP, of Washington, D.C. (Gary A. Orseck, of counsel), for appellee.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices Lampkin and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1    After plaintiff Koss Corporation's senior vice-president, Sujata Sachdeva, was accused of embezzling approximately $34 million from Koss between 2004 to 2008, Koss brought claims of negligence, fraud, and negligent misrepresentation against defendant Grant Thornton, LLP (Thornton), Koss's auditor during this period of time.

¶ 2    The trial court granted Thornton's motion to dismiss on the ground of *forum non conveniens* in favor of an action in Milwaukee County, Wisconsin. This appeal followed.

¶ 3    For the reasons discussed below, we find that the trial court abused its discretion by granting Thornton's motion to dismiss on *forum non conveniens* grounds. First, the trial court overlooked a significant portion of Koss's factual allegations in making its analysis. The case at bar arose out of two distinct sets of factual claims. Koss alleges that: (1) Thornton's auditing team failed to discover the embezzlement in its audits of Koss during the fiscal years ending June 30, 2004, through June 30, 2008; and (2) inadequate firm-wide policies, procedures, and auditor training established by corporate headquarters led to the inadequate audits. Second, although many relevant witnesses reside in Wisconsin and the alleged embezzlement and audits all took place in Wisconsin, many relevant witnesses also reside or work in Cook County and Thornton is headquartered there. Third, most of the documentary evidence is online and thus is equally accessible in Milwaukee and Chicago. Fourth, the other private and public factors do not favor transfer. Last, we take judicial notice that Milwaukee is only an hour and a half's drive from downtown Chicago. Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).[1] Given these facts, and considering that Thornton has the burden

---

[1]"(b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is *** (1) generally known within the territorial jurisdiction of the trial court ***." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).

to prove that the relevant factors strongly favor transfer, we find that the trial court abused its discretion and should have denied the motion to dismiss for *forum non conveniens*.

¶ 4                                    BACKGROUND

¶ 5                                  I. The Parties

¶ 6      Plaintiff Koss Corporation (Koss) is a public corporation whose principal place of business is in Milwaukee, Wisconsin. Koss markets and manufactures stereo headphones and related accessory products.

¶ 7      Defendant Thornton is a corporate public accounting firm with its principal place of business in Chicago, Illinois. Thornton has offices in 26 states. In addition to its headquarters in Chicago, Thornton has Illinois offices in Oakbrook Terrace and Schaumburg. Thornton's Wisconsin offices are located in Milwaukee, Madison, and Appleton.

¶ 8                           II. The Claims in the Complaint

¶ 9      There is no dispute that during the fiscal years ending June 30, 2004, through June 30, 2008, Koss's former vice president of finance, Sujata Sachdeva, embezzled more than $30 million from Koss. Sachdeva pleaded guilty to wire fraud charges in the United States District Court for the Eastern District of Wisconsin on July 16, 2010.

¶ 10     The complaint alleges that during the years in which Sachdeva embezzled the funds, Koss engaged Thornton to audit Koss's financial statements and to conduct reviews of Koss's unaudited quarterly financial statements and they failed to disclose the embezzlement.

¶ 11     In the case at bar, Koss filed a three-count complaint in Cook County, Illinois, against Thornton for (1) professional negligence, (2) fraud and deceit, and (3) negligent misrepresentation. These counts arose out of two distinct sets of factual claims. First, Koss alleges that Thornton's auditing team failed to discover the embezzlement in its audits of Koss during the fiscal years ending June 30, 2004, through June 30, 2008. Second, Koss alleges that inadequate firm-wide policies, procedures, and auditor training established by Thornton's corporate headquarters led to the inadequate audits.

¶ 12                 III. *Forum Non Conveniens* Motion and Related Discovery

¶ 13     On October 25, 2010, Thornton moved to dismiss Koss's complaint pursuant to Illinois Supreme Court Rule 187 based on the doctrine of *forum non conveniens*. Ill. S. Ct. R. 187 (eff. Aug. 1, 1986). The trial court granted leave to conduct discovery relating to Thornton's motion to dismiss prior to deciding the issue. Koss propounded written interrogatories and document requests, and served deposition notices upon Thornton. The following people were deposed: Melissa Koeppel, a Thornton partner; Amy Henselin, Thornton's corporate representative in this case; and Meg Hafer, human resources manager at Thornton in Milwaukee. On January 10, 2012, the trial court granted Thornton's motion to dismiss. This appeal followed.

¶ 14                                    IV. Summary of Discovery

¶ 15        Koss avers in its attorney's affidavit submitted in response to Thornton's *forum non conveniens* motion claims that Thornton's national headquarters located in downtown Chicago is 91.3 miles from the courthouse in Milwaukee County. The affidavit also provides 2009 statistics that in Cook County, more cases were disposed of than newly filed, and in Milwaukee County, more cases were opened than disposed of. However, these numbers tell us nothing about the relative speed with which these two counties could handle a complex case. Thornton avers in its attorney's affidavit in support of its motion to dismiss that both Koss and Thornton retained attorneys in Illinois and Wisconsin to litigate this case.

¶ 16        Since we find that the trial court overlooked Koss's factual claim concerning Thornton's firm-wide policies and training, the discovery below is organized into the two distinct factual claims: the auditing team's failure to uncover the embezzlement, and the corporate headquarters' failure to implement adequate policies and train its auditors.

¶ 17                    A. Claims Concerning the Audits and the Embezzlement
¶ 18                                  1. Potential Witnesses
¶ 19        Melissa Koeppel, a partner at Thornton, avers the following in her affidavit:

¶ 20            Koeppel was the Thornton partner in charge of the Koss audit during the fiscal years ending June 30, 2004, through June 30, 2008. Koeppel resides in Brookfield, Wisconsin, and has maintained an office in Thornton's downtown Chicago office since April 2011, as well as the Milwaukee office.

¶ 21        The individuals who performed the Koss audits are called the Koss engagement team. The Koss engagement team comprised a total of 18 Thornton employees during the fiscal years ending June 30, 2004 through June 30, 2008. The engagement team worked out of Thornton's Milwaukee office, and 17 members reside in Wisconsin. Three reside in Milwaukee. Fourteen reside in other cities closer to Milwaukee than Chicago. One resides in New York.

¶ 22        Thornton's audits and reviews of Koss were planned and performed in Milwaukee, Wisconsin.

¶ 23        Other Thornton professionals who were not engagement team members also billed time to the Koss audits. Thornton calls these employees "other timekeepers."

¶ 24        Thornton provided the following in its responses to written interrogatories.

¶ 25        Three of the other timekeepers reside in Illinois: Mark Scoles is a Thornton partner and billed time to Koss in 2004. Scoles resides in Naperville, Illinois. Robert B. Emkow, a former senior manager, also billed time to Koss in 2004. Emkow resides in Park Ridge, Illinois. Emily Pratt, a former senior associate, also billed time to Koss in 2004, and resides in Chicago.

¶ 26        Thornton's corporate representative in this case, Amy Henselin, testified as to the following in her deposition.

¶ 27        The other timekeepers on the Koss audits provided support to the engagement team, for example, consulting on specific matters.

¶ 28    Wisconsin auditors have regularly travelled to Chicago and elsewhere in Illinois for other audit engagements, partnership interviews, and client meetings. Other than complaints about travel in general, no one has complained to Henselin that coming to Chicago is inconvenient.

¶ 29    Thornton named 15 current and former Koss directors, officers, and employees as subjects of potential testimony in its amended memorandum in support of its motion to dismiss. This list includes former employees Tracy Malone and Julie Mulvaney, who allegedly colluded in Sachdeva's embezzlement. Eight reside in Milwaukee County. Six reside in counties closer to Milwaukee than Chicago. One director resides in Kentucky.

¶ 30    Michael Koss averred the following in his affidavit in opposition to the motion for *forum non conveniens*.

¶ 31    The Koss directors, John Koss, John Stollenwoerk, Thomas Doerr, Theodore Nixon, Lawrence Mattson, and himself, are not inconvenienced by litigating this matter in Cook County. Koss will do what is necessary to ensure that the company's employees and members of its board are available to testify at trial, subject to any applicable objections other than those based on location or residence. Also, more than approximately 30 Koss shareholders reside in Illinois.[2]

¶ 32    Koss's attorney in this case, Michael J. Avenatti, named in his affidavit in opposition to the motion for *forum non conveniens* the following potential third-party witnesses in Illinois:

¶ 33    James J. Hess is the vice president of the Chicago branch of Bank of America (formerly LaSalle Bank) from which Sachdeva made unauthorized wire transfers and withdrawals. Carolann Gemski and Kara Washington are Securities and Exchange Commission (SEC) attorneys who investigated Sachdeva. Donald Ryba was the SEC accountant on the case. The SEC investigation was based in Chicago.

¶ 34    Thornton's attorney in this case, Frank B. Vanker, presented four potential third-party witnesses in his affidavit in support of the motion for *forum non conveniens*.

¶ 35    James Malone was Sachdeva's employee who was paid with funds embezzled from Koss and resides in Milwaukee. Baker Tilly Virchow Krause LLP (Baker Tilly)[3] was the accounting firm that succeeded Thornton as Koss's auditor after Sachdeva's embezzlement was discovered. Individual partners and employees of Baker Tilly who worked on the Koss audit reside in Wisconsin and may be subjects of potential testimony. Specifically, Wayne T. Morgan is a partner at Baker Tilly. Morgan resides in Waukesha, Wisconsin. Jefferson Wells[4] was the accounting firm retained by Koss to investigate and assist in responses to Sachdeva's embezzlement. Individual partners and employees of Jefferson Wells who provided such services to Koss reside in Wisconsin and may be subjects of potential testimony.

¶ 36    In sum, although most Koss employees and most Thornton auditors who worked on the

---

[2]The record does not disclose the specific cities in Illinois in which they reside.

[3]The record does not disclose the location of Baker Tilly.

[4]The record does not disclose the location of Jefferson Wells.

Koss audit reside in Wisconsin, there is no showing that these people would be inconvenienced by coming to Cook County. As detailed above, there are also potential third-party witnesses in Illinois.

¶ 37                              2. Documentary Evidence

¶ 38      Frank B. Vanker, an attorney for Thornton, provided the following information in his affidavit in support of the motion for *forum non conveniens*.

¶ 39      Koss has made available 80 to 90 boxes of documents of accounting and business records in Milwaukee. Koss has posted more than 1 million pages of documents electronically to a secure Internet site. Thornton has electronically provided approximately 170,000 pages of documents, including audit and review work papers relating to Koss engagements.

¶ 40      Amy Henselin testified in her deposition that Thornton's servers are located in Oakbrook Terrace, Illinois; Thornton's auditors' e-mail and electronic audit work papers are located on these servers; the audit work papers also exist in hard copy in Thornton's local offices; and since most documentary evidence exists electronically, it should be readily available in either forum.

¶ 41      B. Claims Concerning Thornton's Policies, Procedures, and Training

¶ 42                              1. Potential Witnesses

¶ 43          a. Witnesses Concerning Thornton Policies and Procedures

¶ 44      Thornton provided the following responses to written interrogatories.

¶ 45      Eight Thornton employees were primarily responsible for reviewing or approving the issuance of audit manuals used in the review and audit services performed for Koss for fiscal years ending June 30, 2004 through June 30, 2008.

¶ 46      Five of these individuals reside in Illinois. John Archambault is the senior partner–professional standards and global public policy. Archambault resides in Libertyville. Maria Manasses is director, national professional standards group, and resides in Orland Park. Keith Newton is the United States partner in charge of audit methodologies/auditing standards, and resides in Oak Park. J.W. Starr is the former managing partner of strategic services, and resides in Chicago. Russell Wieman is the chief financial officer, and resides in Western Springs.

¶ 47      Jennifer Carney is the partner in charge of audit training and knowledge resources and is the head of the group updating Thornton's audit manual and overseeing its audit training materials, and resides in Lincoln, Nebraska. However, Amy Henselin testified in her deposition that Carney works out of Thornton's Chicago office.

¶ 48      Henselin also testified to the following in her deposition.

¶ 49      Thornton's regional partner in charge of professional standards (RPPS), now called the national professional standards partner, helps implement the firm's accounting and auditing policies and is involved in risk management. Mark Scoles was the RPPS until 2008. Mike Santay succeeded Scoles and was the RPPS at the time Koss discovered Sachdeva's

embezzlement in December 2009. Burt Fox succeeded Santay.

¶ 50     Thornton's responses to interrogatories state that Scoles, Santay, and Fox work out of Thornton's Chicago office.

¶ 51     Meg Hafer, human resources manager at Thornton in Milwaukee, testified in her deposition that the partner responsible for the Midwest region, Mike Hall, also has his office in Chicago. Hall's role includes overseeing the regional offices' financials and personnel.

¶ 52     In sum, most potential witnesses concerning Thornton's firm-wide policies and procedures reside in Illinois.

### b. Witnesses Concerning Thornton Training

¶ 54     Amy Henselin testified in her deposition that a majority of Thornton's national mandatory training for auditors from 2004 to 2011 took place at the Q Center in St. Charles, Illinois.

¶ 55     Michael J. Avenatti, Koss's attorney, provided the following in his affidavit in opposition to the motion for *forum non conveniens*.

¶ 56     Programs at the Q Center in St. Charles included core training for auditors and audit interns, audit leadership conferences, and audit senior development.

¶ 57     Koss engagement team members made a total of 33 trips to the Q Center between 2004 and 2008. Melissa Koeppel traveled to Cook County 78 times between 2004 and 2011 in connection with her work at Thornton. Other timekeepers on the Koss engagement took a total of 71 trips to the Q Center.

¶ 58     There are 37 individuals involved in Thornton's training programs who reside in Illinois. Jim Maurer is the national managing partner of strategic learning (the group responsible for creating teaching materials), and his office is in Chicago. Maria Taylor is the meeting team manager and a contact person for arranging Q Center training programs, and her office is in Oakbrook Terrace. Another 35 instructors from Illinois, among many from around the country, are involved in training auditors who worked on the Koss engagement.

¶ 59     Since several Thornton training programs occur in Illinois and several individuals involved in training Thornton auditors reside in Illinois, Illinois appears to be a relevant forum on the factual claim of Thornton's policies, procedures, and auditor training.

### 2. Documentary Evidence

### a. Evidence Concerning Thornton Policies and Procedures

¶ 62     Amy Henselin testified to the following in her deposition.

¶ 63     Thornton's audit and assurance services manual (audit manual) sets forth the firm's policies and procedures. The audit manual is updated annually and reflects Thornton's interpretation and application of generally accepted auditing standards (GAAS). Thornton auditors are required to follow the audit manual. Thornton's bulletins provide information on upcoming pronouncements and changes to firm guidance. The bulletins also reflect Thornton's interpretation and application of GAAS and must be followed by firm auditors.

¶ 64     The Grant electronic library stores Thornton's audit manuals, bulletins, and various templates and practices. The Grant electronic library is maintained in Oakbrook Terrace. Updated audit manuals, bulletins, and other materials are disseminated to auditors nationally from Oakbrook Terrace as well.

¶ 65     Since these materials are disseminated nationally, they should be available in either forum.

¶ 66                    b. Evidence Concerning Thornton Training

¶ 67     Michael J. Avenatti's affidavit in opposition to the motion to dismiss provided that the final versions of training materials for instructors and participants of core training, audit leadership conferences, and other national audit training are stored on servers in Oakbrook Terrace.

¶ 68     In sum, documentary evidence both concerning Thornton policies and concerning Thornton training exists electronically, and should be accessible from either forum.


¶ 69                    C. Motion to Strike Testimony

¶ 70     On December 19, 2011, Koss file a notice of motion to strike portions of the affidavit of Meg Hafer, Thornton's human resources manager in its Milwaukee office, filed in support of Thornton's motion to dismiss for *forum non conveniens*. The motion concerns paragraphs 4, 5, 6, 7, 9, 11, 12, and 13. Koss alleges that Hafer's testimony in her deposition establishes that the evidence presented in these eight paragraphs of Hafer's affidavit "lacks foundation, lacks personal knowledge, and is inadmissible hearsay." Therefore, Koss argues, these paragraphs must be stricken.

¶ 71     The paragraphs in question averred that Hafer "reviewed" or "obtained" information presented in two exhibits that were attached to her affidavit. Exhibit 1 listed the roles, the counties of residence, the state that issued certified public accountant (CPA) licenses, and the current Thornton employment status of the 18 engagement team members. Exhibit 2 listed the names and the counties of residence of 11 Koss directors, officers, and employees.

¶ 72     Paragraph 4 avers, "I reviewed Grant Thornton records pertaining to the 18 individuals whose roles are identified on Exhibit 1 and determined that 11 of the 18 individuals are former Grant Thornton partners or employees as indicated."

¶ 73     Paragraph 5 avers, "I obtained home addresses for each of the individuals listed on Exhibit 1 from Grant Thornton's records. Exhibit 1 accurately reflects the county that corresponds to the home addresses for each individual maintained in Grant Thornton's records."

¶ 74     Paragraph 6 avers, "I reviewed publicly available information to determine whether each individual listed on Exhibit 1 is currently licensed as a CPA in Wisconsin or in Illinois. Exhibit 1 accurately reflects whether each of the individuals is currently licensed as a CPA in Wisconsin or Illinois."

¶ 75     Paragraph 7 avers, "I reviewed information from the LexisNexis® Accurint® database to determine the counties in which the following individuals listed on Exhibit 2 maintain residences: Tracy Malone, Cheryl Mike, and John Koss, Sr. Exhibit 2 accurately reflects the

county, or counties, included in the LexisNexis® Accurint® database where these individuals likely maintain residences."

¶ 76 Paragraph 9 avers, "I reviewed information from www.whitepages.com to determine the home addresses of the remaining individuals listed on Exhibit 2. Exhibit 2 accurately reflects the counties corresponding to the home addresses for these individuals obtained from www.whitepages.com."

¶ 77 Paragraph 11 avers, "It is my understanding, based upon inquiry, that copies of Grant Thornton's electronic work papers and hard copy work papers for Grant Thornton's Koss annual financial statement audits and Grant Thornton's quarterly reviews of Koss unaudited quarterly financial statements are accessible or located in Milwaukee."

¶ 78 Paragraph 12 avers, "Many Grant Thornton training materials are in electronic form and are accessible on-line in Grant Thornton's Milwaukee office."

¶ 79 Paragraph 13 avers, "Grant Thornton's current audit and assurance services manual is accessed on-line and is accessible in the Milwaukee office."

¶ 80 Hafer testified in her deposition that she did not personally contact the individuals listed in the exhibits or independently research the information listed. She testified that an attorney gave her the information from the databases, and she reviewed that information. Hafer testified that she "was able to access [current Thornton employee's] address[es] from our internal HR system."

¶ 81 On January 10, 2012, the trial court denied Koss's motion to strike portions of Hafer's affidavit.

¶ 82                                    ANALYSIS

¶ 83 Thornton appeals the trial court's dismissal on *forum non conveniens* grounds. For the following reasons, we find that the trial court abused its discretion.

¶ 84                          I. Interlocutory Appeal

¶ 85 This is an interlocutory appeal, taken pursuant to Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011). The rule provides in relevant part:

"(a) *** A party may petition for leave to appeal to the Appellate Court from the following orders of the trial court:

***

(2) from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens* ***." Ill. S. Ct. R. 306 (eff. Feb. 16, 2011).

¶ 86 March 9, 2012, this court granted Koss's petition for leave to appeal the trial court's dismissal on the grounds of *forum non conveniens*.

¶ 87                    II. *Forum Non Conveniens* Doctrine

¶ 88 *Forum non conveniens* is an "equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst*

*v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006); *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). This doctrine permits a trial court to transfer a case when a "trial in another forum 'would better serve the ends of justice.' " *Langenhorst*, 219 Ill. 2d at 441 (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)); *Gridley*, 217 Ill. 2d at 169.

¶ 89    The burden is on the party asking for the dismissal to show that the relevant factors "strongly favor" transfer. (Emphasis omitted.) *Langenhorst*, 219 Ill. 2d at 443 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990)); *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 656-57 (2009) (in product liability case where plane crash was in Peru with mostly Peruvian decedents, burden was still on defendant Boeing to show factors strongly favored transfer to Peru); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 833 (2006) (in product liability case where a vehicle accident was in Australia with an Australian plaintiff, burden was still on defendant to show factors strongly favored transfer to Australia).

¶ 90                                   III. Standard of Review

¶ 91    "A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion." *Langenhorst*, 219 Ill. 2d at 441. An appellate court will reverse a trial court's decision on a *forum non conveniens* motion only if the "defendants have shown that the circuit court abused its discretion in balancing the relevant factors." *Langenhorst*, 219 Ill. 2d at 442; *Gridley*, 217 Ill. 2d at 169; *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003). The Illinois Supreme Court has stated: "A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Langenhorst*, 219 Ill. 2d at 442; *Gridley*, 217 Ill. 2d at 169; *Dawdy*, 207 Ill. 2d at 177. The issue then is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would.

¶ 92                                   IV. Preliminary Issues

¶ 93    Before we conduct our full *forum non conveniens* analysis, we must respond to three of Koss's arguments that could impact our review. First, Koss claims that the trial court abused its discretion because it overlooked a significant portion of the complaint. Second, Koss claims that the trial court abused its discretion because it did not hold Thornton to the correct evidentiary burden for a motion to dismiss for *forum non conveniens*. Third, Koss claims that the trial court abused its discretion when it denied a motion to strike portions of an affidavit that was allegedly not "factually sufficient." We now address each argument in turn.

¶ 94                                   A. Scope of Koss's Complaint

¶ 95    Koss claims that the trial court abused its discretion because it did not consider the full scope of their complaint. First, Koss argues that the trial court overlooked a portion of the complaint and that this skewed the trial court's *forum non conveniens* analysis. Second, Koss

argues that the trial court placed an unfair burden on it to take extensive discovery and prove up its entire case on a motion to dismiss for *forum non conveniens* motion. We will not respond to Koss's second argument because it has no effect on our analysis of whether the trial court abused its discretion in granting Thornton's motion for *forum non conveniens*.

¶ 96 Koss's complaint alleges negligence, fraud, and negligent misrepresentations perpetrated by two distinct groups of people: (1) by Thornton's accountants who worked on Koss's engagement team and directly caused the alleged injury; and (2) by Thornton's corporate headquarters personnel who provided inadequate policies, procedures, and training to its accountants, which indirectly caused the alleged injury. In granting Thornton's motion to dismiss for *forum non conveniens*, the trial court order overlooked the second set of actors, stating "the allegations in the complaint surround auditing the books and records in Wisconsin and providing reports and representations pursuant to engagement letters executed in Wisconsin."

¶ 97 The case at bar is comparable to *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261 (2011). *Erwin* involved a personal injury action that alleged birth defects caused by workers' exposure to hazardous working conditions. *Erwin*, 408 Ill. App. 3d at 262. This court held that the testimony of corporate officers in Illinois was relevant to injuries that took place in Texas and Arizona because the corporate officers created policies that affected working conditions. *Erwin*, 408 Ill. App. 3d at 279-81. In the case at bar, Thornton correctly distinguishes that, in *Erwin*, a small number of corporate officers may have actually known about the hazardous working conditions, whereas in the instant action Koss has not alleged that Thornton's corporate personnel knew about their auditor's alleged actions. *Erwin*, 408 Ill. App. 3d at 279-81.

¶ 98 However, although this is a distinguishing factor, we do not find it to be a dispositive one. In fact, the court in *Erwin* observed that three witnesses allegedly had knowledge of the risks involved, but also gave considerable weight to the need for 16 other corporate witnesses who were responsible only for corporate policymaking. *Erwin*, 408 Ill. App. 3d at 271.

¶ 99 Though *Erwin* may not be "on all fours" with the case at bar, it does illustrate the relevance of Thornton's corporate officers as witnesses. As discussed further below, Thornton's audit manual and bulletins govern Thornton's auditors' actions and are created and reviewed in Thornton's Cook County headquarters. In addition, most of Thornton's training programs are created and administered in Illinois. Despite these facts, the trial court here overlooked Koss's allegations of corporate inadequacy.

¶ 100 The burden remains with the movant to prove that the relevant factors "strongly favor[ ]" dismissal for a more convenient forum. (Emphasis omitted.) *Langenhorst*, 219 Ill. 2d at 442. However, even with defendant's substantial evidentiary burden, our supreme court has stated that "requiring extensive investigation prior to deciding a *forum non conveniens* motion would defeat the purpose of the *forum non conveniens* motion." *Gridley*, 217 Ill. 2d at 167. In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981), the United States Supreme Court held that it is not necessary for "defendants seeking *forum non conveniens* dismissal [to] submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." It is unreasonable to require

a plaintiff to prove up its entire case on a motion to dismiss for *forum non conveniens* where a defendant, with its greater evidentiary burden, has no such obligation.

¶ 101     The trial court rejected Koss's argument that defendant's corporate employees were relevant, stating "[p]laintiff have not cited the significance of any testimony potentially elicited from these individuals to further their claims of injury that took place in Milwaukee." However, Koss's complaint included a litany of allegations against Thornton's corporate policies and training. In addition, Koss's answer to Thornton's motion to dismiss both named and described the relevance of Thornton's corporate personnel who may be called to testify at trial. It was unreasonable to require a plaintiff to compile further information through affidavits from each of its prospective witnesses on a motion to dismiss for *forum non conveniens*. Therefore, we will decide this appeal on the record below us.

¶ 102     Thornton argues that Koss's allegations of corporate negligence, fraud, and negligent misrepresentation are conclusory and thus should be dismissed. However, Thornton's argument is better suited for a motion to dismiss under section 2-615 of the Code of Civil Procedure with respect to pleadings for failure to state a claim. 735 ILCS 5/2-615 (West 2010). In this motion to dismiss for *forum non conveniens*, preliminary discovery was limited to *forum non conveniens* factors and it would be unreasonable for this court to even consider Thornton's argument that Koss has not pleaded a cause of action. Furthermore, the trial court's order granting Thornton's motion to dismiss for *forum non conveniens* did not discuss whether Koss's claims are conclusory. Therefore, Koss's allegations against Thornton are not conclusory and should have been given consideration by the trial court.

¶ 103     In order to review the propriety of the trial court's ruling, we will assess the motion to dismiss for *forum non conveniens* considering the indirect injury allegedly caused by Thornton's corporate personnel.

¶ 104                              B. Thornton's Evidentiary Burden

¶ 105     Koss claims that the trial court abused its discretion because Thornton did not satisfy the evidentiary burden on a *forum non conveniens* motion in two ways: (1) they did not provide affidavits from witnesses stating that they would be unwilling to testify at a trial in Cook County; and (2) Thornton failed to proffer evidence that any witnesses in Wisconsin are relevant to the trial. We disagree and find that the circuit court did not abuse its discretion as it relates to the allocation of evidentiary burdens.

¶ 106     Koss first argues that Thornton did not carry its evidentiary burden to prove that witnesses would be unwilling to testify at trial. As stated previously, the burden is on the party asking for dismissal to show that the relevant factors " 'strongly favor' " transfer. (Emphasis omitted.) *Langenhorst*, 219 Ill. 2d at 442 (quoting *Griffith*, 136 Ill. 2d at 107). In the case at bar, Thornton did not proffer any evidence that witnesses are unwilling to testify in Cook County or that Illinois would be an inconvenient forum, and Koss claims that the trial court thus abused its discretion when it held that Wisconsin is a more convenient forum for witnesses. However, we know of no rule that bars a trial court from inferring the relative convenience of alternative forums, based on its knowledge of their residence and workplace.

¶ 107     Koss relies on three cases to support its proposition that, on a *forum non conveniens*

motion, the movant must produce affidavits from witnesses stating they will not travel to a location. *The Cradle Society v. Adopt America Network*, 389 Ill. App. 3d 73, 76 (2009); *Erwin*, 408 Ill. App. 3d at 277; *Brant v. Rosen*, 373 Ill. App. 3d 720, 728 (2007). However, in all three cases, the dispositive factor was that the defendants did not produce names or addresses of potential witnesses, yet they claimed that the plaintiff's choice of forum was inconvenient. *The Cradle Society*, 389 Ill. App. 3d at 76 ("[A]s the burden of proof lies with the defendant on this issue, we will not speculate about a witness's whereabouts or unwillingness where [defendant] *has not yet identified specific witnesses* who would be unwilling to testify in Illinois." (Emphasis added.)); *Erwin*, 408 Ill. App. 3d at 277 (dismissing defendant's *forum non conveniens* motion where defendant failed to identify a single out-of-state witness); *Brant*, 373 Ill. App. 3d at 728 (holding that the trial court could not speculate about the prospective inconvenience of unnamed witnesses). These cases stand for the proposition that a court cannot speculate as to witnesses' unwillingness to testify at trial *where the witnesses have not yet been identified*. In the case at bar, the parties have named approximately 60 witnesses that reside closer to Milwaukee than Cook County. Therefore, the trial court was within its discretion to consider the inconvenience to witnesses residing in Wisconsin without affidavits from each witness stating his or her unwillingness to travel.

¶ 108    Second, Koss argues that Thornton did not carry its evidentiary burden to prove the relevance of out-of-state witnesses. Koss relies on one decades-old appellate case, *Schoon v. Hill*, 207 Ill. App. 3d 601, 608 (1990), that required a defendant to name which of its witnesses would testify at trial and describe their testimony. In *Schoon*, the appellate court affirmed the trial court's denial of a motion to dismiss for *forum non conveniens* where defendant failed to indicate "which witnesses would actually be called to support its defense" and "what the testimony of potential witnesses would be, how their testimony would impact the defense or whether or not their depositions could be used successfully at trial." *Schoon*, 207 Ill. App. 3d at 608. However, in *Hernandez v. Karlin Foods Corp.*, 322 Ill. App. 3d 805, 810 (2001), our court affirmed a trial court's inference that witnesses "who had knowledge about the case" could "reasonably be expected to testify at trial." Similarly, in the case at bar, it can be reasonably expected that Thornton's employees on the Koss engagement team are likely to testify given their direct involvement in the alleged injury. In addition, our supreme court has stated that "requiring extensive investigation prior to deciding a *forum non conveniens* motion would defeat the purpose of the *forum non conveniens* motion." *Gridley*, 217 Ill. 2d at 167. Our supreme court has held that it is not necessary for "defendants seeking *forum non conveniens* dismissal [to] submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Piper Aircraft*, 454 U.S. at 258-59. Koss also contends that 2 of Thornton's 14 witnesses who reside in Wisconsin will likely invoke the fifth amendment and thus their testimony will not be relevant. U.S. Const., amend. V. We do not find this argument persuasive and decline to hypothesize whether prospective witnesses will or will not invoke their fifth amendment right. Therefore, the trial court did not abuse its discretion where it considered the likelihood that several Wisconsin residents would testify about the Koss audits.

¶ 110     Koss claims that the trial court abused its discretion when it denied a motion to strike portions of an affidavit that was allegedly not "factually sufficient." Our colleague, Justice Joseph Gordon,[5] aptly explained the sufficiency required in affidavits in *forum non conveniens* cases in *Botello v. Illinois Central R.R. Co.*, 348 Ill. App. 3d 445, 450-52 (2004).

"Supreme Court Rule 187, which *** specifically pertains to affidavits filed in support of *forum non conveniens* motions, provides in pertinent part:

'Hearings on motions to dismiss or transfer the action under the doctrine of *forum non conveniens* shall be scheduled so as to allow the parties sufficient time to conduct discovery on issues of fact raised by such motions. Such motions may be supported and opposed by affidavit. In determining issues of fact raised by affidavits, any competent evidence adduced by the parties shall also be considered. The determination of any issue of fact in connection with such a motion does not constitute a determination of the merits of the case or any aspect thereof.' 134 Ill. 2d R. 187.

As is the case with other non-Rule 191(a) affidavits, affidavits filed under Rule 187 are determined by a different standard than the sufficiency of those affidavits required under Rule 191(a) for motions for summary judgement (section 2-1005), involuntary dismissal (section 2-619), or jurisdiction over a person (section 2-301(b)). See *Walker v. Iowa Marine Repair Corp.*, 132 Ill. App. 3d 621, 630, 477 N.E.2d 1335, 1341 (1985); see also *Haring v. Chicago & North Western Transportation Co.*, 103 Ill. 2d 530, 533, 470 N.E.2d 288, 289 (1984). Both federal and state courts agree that the sufficiency of affidavits filed in support of a *forum non conveniens* motion is measured by the extent to which it allows the trial court to balance the private and public interest factors, which will be discussed in detail below. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 70 L. Ed. 2d 419, 436, 102 S. Ct. 252, 266 (1981); *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 790-91 (N.D. Ill. 2001); *Gasda v. Indian Harbor Belt R.R. Co.*, No. 98 C 8371 (N.D. Ill. August 2, 1999); *Countryman & Lee v. Stein Roe & Farnham*, 681 F. Supp. 479, 483-84 (N.D. Ill. 1987); *Walker*, 132 Ill. App. 3d at 630, 477 N.E.2d at 1341; *Haring*, 103 Ill. 2d at 533, 470 N.E.2d at 289. These cases do not require that the information contained in the affidavit necessarily be based upon first-hand knowledge, as long as the affidavits are factually sufficient. See *Walker*, 132 Ill. App. 3d at 630, 477 N.E.2d at 1341; see also *Haring*, 103 Ill. 2d at 533, 470 N.E.2d at 289. The courts agree that, based upon the difference in the stage of litigation which invokes the issue of summary judgment and that which invokes *forum non conveniens*, an affidavit filed in support of a *forum non conveniens* motion requires less specificity and less detail. See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 70 L. Ed. 2d 419, 437, 102 S. Ct. 252, 266 (1981) (finding that at the *forum non conveniens* stage of the litigation some leeway in specificity of an affidavit must be given); *Walker*, 132 Ill. App. 3d at 630, 477 N.E.2d

---

[5]Justice Joseph Gordon passed away on June 26, 2012.

at 1341 (holding that so long as the affidavit can show that information and witnesses necessary to the trial are located in counties far more convenient to the action, no more specificity is required). This distinction which the courts have drawn between *forum non conveniens* and summary judgment motions as to specificity and level of detail is consistent with the fact that the affidavits filed under Rule 187 are omitted from the prerequisites set forth in Rule 191(a). 210 Ill. 2d R. 191(a). Accordingly, we are not convinced that affidavits should be considered insufficient even if they contain elements of hearsay. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 70 L. Ed. 2d 419, 436, 102 S. Ct. 252, 266 (1981); *Walker*, 132 Ill. App. 3d at 630, 477 N.E.2d at 1341; *Haring*, 103 Ill. 2d at 533, 470 N.E.2d at 289; accord *Butcher v. Gerber Products Co.*, No. 98 CIV 1819 (RWS) (S.D.N.Y. August 3, 1998) (finding that one affidavit including a general statement of the nature of witness testimony is sufficient and the plaintiff need not procure an affidavit from each individual witness outlining his or her specific testimony)." *Botello*, 348 Ill. App. 3d at 450-52.

¶ 111    In *Botello*, the risk manager for the defendants railroad and railroad company filed an affidavit in support of the defendants' motion to dismiss based on *forum non conveniens*. *Botello*, 348 Ill. App. 3d at 447. The affidavit set forth the names and addresses of railroad employees, police officers at the scene of the accident, responding medical personnel, and the location of employment records. *Botello*, 348 Ill. App. 3d at 453. The court held that "the contents of the *** affidavit sufficiently demonstrated that there were witnesses and information necessary to the trial of the case that could be more conveniently produced if the case was tried in the suggested alternate forum." *Botello*, 348 Ill. App. 3d at 453.

¶ 112    *Walker* concerned an injury of a ship engineer while working in the ship engine room. *Walker*, 132 Ill. App. 3d at 622. The defendant filed an affidavit in support of its motion to dismiss for *forum non conveniens*, which set forth the names and counties of residence of co-workers and the port engineer, as well as the location of employment records and company representatives. *Walker*, 132 Ill. App. 3d at 630. The court held that "The contents of the motion and affidavit are sufficient to show therefore that information and witnesses necessary to the trial are located in counties far more convenient to this action than Cook." *Walker*, 132 Ill. App. 3d at 630.

¶ 113    *Haring* concerned the injury of a railroad employee. *Haring*, 103 Ill. 2d at 531. The defendant railroad's affidavit in support of its motion to dismiss on the basis of *forum non conveniens* set forth the names and addresses of railroad coworkers, supervisors, and other witnesses of the accident. *Haring*, 103 Ill. 2d at 532-33. The court held that "[t]he contents of [defendant's] affidavit are sufficient to demonstrate that there are witnesses necessary to the trial of this case whose testimony can be more conveniently produced [in the alternate forums]." *Haring*, 103 Ill. 2d at 533. However, the plaintiff's affidavit copied a list of more than 250 names of the defendant's management employees and asserted that some may be witnesses. *Haring*, 103 Ill. 2d at 533. The court stated this affidavit was deficient. *Haring*, 103 Ill. 2d at 533.

¶ 114    Like the factually sufficient affidavits in *Botello*, *Walker*, and *Haring*, Hafer's affidavit sets forth specific information on the locations of specific Thornton and Koss personnel and specific documents. Unlike the deficient plaintiff's affidavit in Haring, Hafer's affidavit does

not present merely "general allegations." *Haring*, 103 Ill. 2d at 532. Though Exhibit 1 attached to Hafer's affidavit did not include the names of the 18 engagement team members, their names were easily ascertainable in other evidence in support of the motion to dismiss.

¶ 115    Though Hafer did not conduct original research on the information presented in her affidavit, she reviewed and presented evidence, including the locations and roles, of specific potential Thornton and Koss witnesses. Furthermore, Hafer's deposition testimony does not necessarily contradict or undermine the statements in her affidavit. The statements that she "reviewed" or "obtained" the information in question encompass reviewing information given her by an attorney.

¶ 116    Therefore, we hold that the trial court did not abuse its discretion in denying Koss's motion to strike portions of Hafer's affidavit.

¶ 117                    V. Koss's Choice of Forum

¶ 118    Before weighing the relevant factors, a court must first decide how much deference to give to a plaintiff's choice of forum. *Langenhorst*, 219 Ill. 2d at 448 (the supreme court determined the appropriate amount of deference, before weighing the relevant factors).

¶ 119    In the case at bar, the trial court did not accord reasonable deference to Koss's choice of forum. The plaintiff's choice of forum is a "substantial factor" in deciding a *forum non conveniens* motion. *Dawdy*, 207 Ill. 2d at 172; *Griffith*, 136 Ill. 2d at 106. "Thus, when a plaintiff chooses his home forum or the site of the accident or injury, it is reasonable to assume that the choice of forum is convenient." *Gridley*, 217 Ill. 2d at 170; *Dawdy*, 207 Ill. 2d at 173.

¶ 120    The trial court held, and Thornton argues, that Koss's choice of forum deserves less deference because it is neither Koss's home forum nor the site of its injury. Although Cook County is not Koss's home forum, the alleged inadequate policies, procedures, and training discussed above were mostly created, reviewed, and approved in Cook County. Thus, Cook County is the site of a substantial portion of the acts that gave rise to Koss's injury. Koss's choice of forum should be accorded standard deference and, therefore, the trial court's application of "less deference" was improper.

¶ 121                    VI. Private Interest Factors

¶ 122    The Illinois Supreme Court has held that a court must consider both "the private and public interest factors" in deciding a *forum non conveniens* motion. *Langenhorst*, 219 Ill. 2d at 443; *Gridley*, 217 Ill. 2d at 170; *Dawdy*, 207 Ill. 2d at 172-73. The private interest factors include: " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive ***.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *First American Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002)); *Gridley*, 217 Ill. 2d at 170; *Dawdy*, 207 Ill. 2d at 172.

¶ 123    First, the convenience of the parties does not weigh in favor of transfer to Wisconsin. With respect to this factor, "the defendant must show that the plaintiff's chosen forum is

inconvenient to the defendant." *Langenhorst*, 219 Ill. 2d at 450. "[T]he defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff." *Langenhorst*, 219 Ill. 2d at 445.

¶ 124    One consideration is Thornton's corporate headquarters. *Vivas*, 392 Ill. App. 3d at 658 (location of defendant's headquarters in Illinois weighed against the situs of the plane crash in Peru); *Erwin*, 408 Ill. App. 3d at 276 (location of defendant's headquarters and alleged source of safety policies weighed against plaintiffs' residences in Arizona and Texas). Thornton's headquarters is in Chicago, Illinois. While *Gridley* states that the defendant's principal place of business is "not dispositive" and "only one factor to be considered" (*Gridley*, 217 Ill. 2d at 173), this case is distinguishable. *Gridley* concerned the defendant insurance company's compliance with state automobile salvage laws. *Gridley*, 217 Ill. 2d at 174. The defendant's headquarters was the only connection to Illinois, and the headquarters was unconnected to the litigation, since the defendant "handle[d] compliance with salvage laws on a state-by-state basis." *Gridley*, 217 Ill. 2d at 174. The Illinois Supreme Court dismissed on the basis of *forum non conveniens*. *Gridley*, 217 Ill. 2d at 161. Unlike *Gridley*, Thornton's corporate headquarters is connected to the litigation as the source of firm-wide policies and auditor training.

¶ 125    Furthermore, although most witnesses concerning the Koss audit engagements reside in Wisconsin, several witnesses concerning Thornton's policies and auditor training reside in Illinois. Koss has averred that its directors are not inconvenienced by litigating in Cook County. It is unclear whether Thornton's Wisconsin witnesses would be inconvenienced by coming to Cook County. The distance alone is not unreasonable or inconvenient.

¶ 126    Cook County is less than 100 miles from the courthouse in Milwaukee County. While there is no bright-line rule of inconvenient distances, Thornton cites Illinois Supreme Court cases holding that distances of 100 miles and less were still inconvenient. *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 341 (1994) (100 miles from the site of the accident was inconvenient); *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 402 (1991) (30 miles between counties was inconvenient). However, in *Peile*, "virtually none of the witnesses or other sources of proof [were] located in [the plaintiff's chosen county]." *Peile*, 163 Ill. 2d at 340. Unlike *Peile*, several witnesses for Thornton's firm-wide policies and training are located in Illinois, closer to Chicago than Milwaukee. In *Washington*, only the corporate defendant was a resident of plaintiff's chosen county, but it was also a resident of the other county in question. *Washington*, 144 Ill. 2d at 400. Again, the present case is also distinguishable from *Washington* because several witnesses reside in Illinois, closer to Chicago than Milwaukee.

¶ 127    Second, the relative ease of access to sources of testimonial, documentary and real evidence does not require transfer to Wisconsin. Koss averred that it would try to ensure that the company's employees and members of its board would be available to testify in Cook County. Employees of Koss and Thornton can be compelled to testify in either state. Ill. S. Ct. R. 237(b) (eff. July 1, 2005). See *The Cradle Society*, 389 Ill. App. 3d at 77 ("Ohio representatives employed by [defendant] are subject to compulsory process in Illinois"). Thornton employees identified as potential witnesses reside in both Illinois and Wisconsin. This case is thus distinguishable from *Satkowiak v. Chesapeake & Ohio Ry. Co.*, 106 Ill. 2d 224 (1985). In *Satkowiak*, all but one of the witnesses resided in one state, and that single

witness was not an employee of any of the parties. *Satkowiak*, 106 Ill. 2d at 229. The possibility of employees leaving the company and eluding compulsory process favored dismissal in that case. *Satkowiak*, 106 Ill. 2d at 230-31. In the case at bar, where employees reside in both states, this concern does not favor one forum or the other.

¶ 128    The documentary evidence exists mainly electronically and, as such, is available in either forum. With respect to hard-copy documents, the location of documents and records has become a less significant factor in *forum non conveniens* analysis in the modern age of e-mail, Internet, telefax, copying machines and worldwide delivery services, since they can now be easily copied and sent. *Woodward*, 368 Ill. App. 3d at 834.

¶ 129    Lastly, the court must consider all the other " 'practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 517). Both Koss's and Thornton's attorneys maintain offices in Cook County. The Illinois Supreme Court has stated that, while little weight should be accorded this factor, a court may still consider it in the *forum non conveniens* analysis. *Dawdy*, 207 Ill. 2d at 179; *Woodward*, 368 Ill. App. 3d at 836.

¶ 130    In sum, the private interest factors do not favor either party.

¶ 131                            VII. Public Interest Factors

¶ 132    When deciding a *forum non conveniens* motion, a court must also consider the public interest factors. These factors include: "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17); *Gridley*, 217 Ill. 2d at 170; *Dawdy*, 207 Ill. 2d at 173.

¶ 133    First, Koss argues that Cook County has a significant interest in deciding the case at bar locally. Our supreme court has held that a forum has a significant interest in deciding a controversy locally where a cause of action that occurs within its borders gives rise to an injury. *Dawdy*, 207 Ill. 2d at 183; see also *Smith v. Jewel Food Stores, Inc.*, 374 Ill. App. 3d 31, 34 (2007) (holding that Kendall County had a significant interest in a dispute where an automobile accident occurred within its borders). Furthermore, a forum has "an interest in ensuring the safety of the products that its corporations build and ship throughout the world, particularly when one of those corporations has its world headquarters here." *Vivas*, 392 Ill. App. 3d at 661. While the location of a corporate headquarters is not a "dispositive" factor, it is still a factor we may consider. *Gridley*, 217 Ill. 2d at 173.

¶ 134    In the case at bar, Koss alleges that Thornton's corporate personnel, who are headquartered in Cook County, are responsible for inadequate policies, procedures, and training. If these factual allegations are proven at trial, a substantive portion of the acts that gave rise to Koss's injury will have occurred within Cook County. Therefore, like in *Jewel Food*, where a county had significant interest in an accident that occurred within its borders, Cook County has a significant interest in deciding the case at bar. *Jewel Food*, 374 Ill. App. 3d at 34. In addition, like in *Vivas*, where the United States had an interest in ensuring the quality of products manufactured by a corporation headquartered in the United States, in the

case at bar, Cook County has an interest in ensuring the quality of services offered by a corporation headquartered in Cook County. *Vivas*, 392 Ill. App. 3d at 661. Thornton argues that Milwaukee County also has a similar interest in deciding this case because the audits at issue took place within its borders and because the auditors are licensed by the State of Wisconsin. Although Thornton's argument illustrates that Milwaukee County has an interest in this controversy, it does not satisfy Thornton's burden to show that the factor strongly favors dismissal to an alternative forum since both jurisdictions are affected.

¶ 135    Second, Koss argues that, because Cook County has a significant connection to the case at bar, it is fair to impose trial expenses and the burden of jury duty on residents of Cook County. We agree. Our supreme court has instructed that the residents of one county "should not be burdened with jury duty" where the events at issue occurred in another county. *Dawdy*, 207 Ill. 2d at 183. However, as discussed above, a significant portion of the alleged events took place at Thornton's headquarters in Cook County. Therefore, it is fair and reasonable to impose both trial expenses and the burden of jury duty on residents of Cook County.

¶ 136    Third, Koss argues that Cook County resolves civil suits faster than Milwaukee County and, thus, an analysis of court congestion favors Cook County. We agree, although our supreme court has held that "[w]hen deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket." *Langenhorst*, 219 Ill. 2d at 451. In the case at bar it is unrefuted that the circuit court of Cook County disposes of its cases faster than Milwaukee County courts. The trial court here disregards this unrefuted fact. However, there is no evidence presented by either party comparing the courts' docket of cases and its average length of time to trial.

¶ 137    Finally, Koss argues that choice of law is not an important consideration on a motion to dismiss for *forum non conveniens*. We agree. Although choice-of-law issues are a factor to consider, they are not usually dispositive. *Woodward*, 368 Ill. App. 3d at 837. "An Illinois court is competent to determine which law applies to this controversy and to apply the law of [Wisconsin] if necessary." *Woodward*, 368 Ill. App. 3d at 837. In the case at bar, the trial court did not address choice of law in its order granting Thornton's motion to dismiss.

¶ 138    In sum, we find that public interest factors favor Illinois as a proper forum.


¶ 139                                    VIII. Balancing

¶ 140    In deciding a *forum non conveniens* motion, the trial court "must balance the private and public interest[ ]" factors. *Dawdy*, 207 Ill. 2d at 172; *Gridley*, 217 Ill. 2d at 169-70. The balancing should be done "without emphasizing any one factor." *Langenhorst*, 219 Ill. 2d at 443; *Gridley*, 217 Ill. 2d at 169; *Dawdy*, 207 Ill. 2d at 180. "On review, the trial court's decision will be reversed only if *** the court abused its discretion in balancing the relevant factors." *Dawdy*, 207 Ill. 2d at 172; *Griffith*, 136 Ill. 2d at 106. The Illinois Supreme Court has stated: "A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Langenhorst*, 219 Ill. 2d at 442; *Gridley*, 217 Ill. 2d at 169; *Dawdy*, 207 Ill. 2d at 177.

¶ 141    In *Chung v. Advocate Health Care*, 336 Ill. App. 3d 789, 790-91 (2002), our court

reversed a dismissal based on *forum non conveniens* in a medical malpractice case brought in Cook County. Factors favoring the alternate forum included: the alleged malpractice occurred in the alternate forum, and 11 occurrence witnesses, the plaintiffs, and most of the defendants resided in the alternate forum. *Chung*, 336 Ill. App. 3d at 794-95. Factors favoring Cook County included: the hospital where the malpractice occurred maintained a residence in Cook County; the hospital the plaintiff later transferred to was in Cook County; two occurrence witnesses and "a number of physicians" from the transfer hospital resided in Cook County; and other witnesses were spread across various other counties and states. *Chung*, 336 Ill. App. 3d at 795. This court held that, while both counties had ties to the case, the private and public interest factors did not strongly favor the alternate forum and we reversed the trial court's dismissal on grounds of *forum non conveniens*. *Chung*, 336 Ill. App. 3d at 795-96.

¶ 142    The case at bar is similar to *Chung* in that there are ties to both Cook County and the alternate forum; however, the factors do not strongly favor the alternate forum. First, Koss's choice of forum deserved standard deference because actions causing the alleged injury took place in part at Thornton's headquarters in Cook County. Second, the private interest factors do not favor transfer because witnesses are spread between Wisconsin and Illinois and documentary evidence existed electronically. Third, the public interest factors do not favor Thornton because Illinois has a significant interest in the controversy and, thus, it is fair to impose trial expenses and jury duty on Illinois residents. As the private and public interest factors did not weigh strongly in favor of transfer and since the trial court did not consider a significant amount of Koss's allegations in its complaint, we find the trial court abused its discretion in transferring this case.

¶ 143                                   IX. Conclusion

¶ 144    For the foregoing reasons, we reverse and remand the trial court's order granting Thornton's motion to dismiss on *forum non conveniens* grounds.

¶ 145    Reversed and remanded.