NOTICE
Decision filed 07/12/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150116

NO. 5-15-0116

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| DAVID DECKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-L-807 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Union Pacific Railroad Company, filed a petition for leave to appeal from an order of the circuit court of St. Clair County, denying its motion to transfer this case to Marion County based on *forum non conveniens*. The petition for leave to appeal was filed pursuant to Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011). We granted the petition, and for reasons that follow, we affirm.

¶ 2                    BACKGROUND AND PROCEDURAL HISTORY

¶ 3    The plaintiff, David Decker, was employed by the defendant as a locomotive engineer. On July 23, 2012, at 7 a.m., the plaintiff reported for work at the defendant's

Salem, Illinois, yard, along with brakeman Kevin Flanigan and conductor William J. McDaneld. The plaintiff was a member of a three-man crew that was scheduled to run one of the defendant's locomotives from Salem to Mt. Vernon, Illinois, to drop off freight cars at the Mt. Vernon yard. After dropping off the cars, the crew was scheduled to return to Salem. The plaintiff obtained the paperwork for the run, completed the morning briefing with the crew, and then began his inspection of the locomotive. As the plaintiff stepped onto the floor of the air compressor compartment, he slipped on an oily film and fell. He suffered injuries to his neck, right shoulder, and right arm. There were no witnesses to the plaintiff's fall.

¶ 4    A few minutes after the plaintiff fell, brakeman Flanigan discovered the plaintiff on the floor in the air compressor compartment. The plaintiff asked Flanigan to help him up, and Flanigan assisted the plaintiff to his feet. The crew then contacted their supervisors at the Salem yard. One of the supervisors, T. Andy Brown, notified the defendant's claims office of the incident, and then drove the plaintiff to the emergency department at Salem Township Hospital. James Crawford, an employee in the claims office, was assigned to investigate the incident. He went to the Salem yard that day, and obtained recorded statements from brakeman Flanigan and Conductor McDaneld.

¶ 5    Clay Monroe, another supervisor at the Salem yard, called Glenn Elliot, a supervisor at the defendant's Dupo Service Track, to request a mechanical inspection of the subject locomotive, as the defendant had no mechanics that worked out of the Salem yard. The Dupo Service Track is located in St. Clair County, Illinois. Glenn Elliot held the position of Foreman General 1–Locomotives, and supervised 4 foremen, and 10

2

mechanics, at the Dupo Service Track. Elliot and his team conducted periodic inspections of the defendant's locomotives and performed maintenance and service on locomotives at the Dupo Service Track. Elliot also dispatched his team to other locations within the territory of the defendant's St. Louis Service Unit to inspect and service locomotives.

¶ 6 Elliot was the only mechanic available at the time the inspection request was made. He drove from the Dupo Service Track to the Salem yard. The drive took about an hour. Elliot arrived at the Salem yard at approximately 9:50 a.m., and began an inspection of the subject locomotive. Elliot noted that an oily film covered approximately 90% of the floor in the air compressor compartment. He took some photos of the area, and then applied a special product to the floor in an effort to dry up the oily substance. Once Elliot finished his inspection, and completed his report, he returned to his office in Dupo, Illinois. When Elliot arrived back at his office, he made a copy of his report, and sent it to the defendant's claims office in St. Louis, Missouri. Elliot retained the original of his report in his office at the Dupo yard.

¶ 7 On May 8, 2013, the plaintiff filed a two-count complaint against the defendant in the circuit court of Marion County. Count I was brought under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq*. (2012)), and alleged, among other things, that the defendant was negligent in failing to provide the plaintiff with a reasonably safe place to work, and that the plaintiff's injuries resulted in whole or in part from the defendant's negligence. Count II was brought under the Locomotive Inspection Act (LIA) (49 U.S.C. § 20701 *et seq*. (2012)), and alleged that the plaintiff was injured as a

3

result of defective equipment on the locomotive. Section 20701 of the LIA provides that a railroad carrier may use a locomotive on its railroad line only when the locomotive and its parts and appurtenances (1) are in proper condition and safe to operate; (2) have been inspected as required; and (3) can withstand every test prescribed by the Secretary of Transportation. 49 U.S.C. § 20701 (2012). A violation of the LIA constitutes negligence *per se* under the FELA.

¶ 8 On August 28, 2014, the plaintiff filed a motion to voluntarily dismiss his action in Marion County, without prejudice. The defendant filed a memorandum in response, and claimed that the plaintiff was seeking a voluntary dismissal in order to avoid compliance with the expert disclosure deadline in the scheduling order. The defendant asked the court to award it $4032.84 in costs under Illinois Supreme Court Rule 219(e) (eff. July 1, 2002). The plaintiff's motion was called for hearing on September 22, 2014. After considering the arguments of counsel, the court took the matter under advisement. On December 12, 2014, the court issued an order granting the plaintiff's motion for voluntary dismissal without prejudice. The court did not grant the defendant's request for costs under Rule 219(e), but noted that the plaintiff had tendered taxable costs to the defendant.

¶ 9 On December 17, 2014, the plaintiff filed a nearly identical, two-count complaint against the defendant in the circuit court of St. Clair County. Count I alleged negligence under the FELA, and count II alleged violations of the LIA.

¶ 10 On January 30, 2015, the defendant filed a motion and memorandum of law, with attachments, requesting that the court transfer the case to Marion County based on *forum non conveniens*. Therein, the defendant argued that St. Clair County had little relevant

4

connection to the plaintiff's cause of action, and that the plaintiff had engaged in "forum shopping" when he voluntarily dismissed his case in Marion County, and refiled it in St. Clair County. The defendant further argued that St. Clair County was an inconvenient forum in which to try the case because the plaintiff did not reside in St. Clair County, and the events which allegedly caused the plaintiff's injuries did not occur in St. Clair County. The defendant noted that the incident occurred in Marion County, and claimed that the majority of relevant fact witnesses resided in or near Marion County, that the plaintiff's medical care providers were located in Marion County and Jefferson County, and that the subject locomotive was inspected immediately after the plaintiff's fall at the Salem yard in Marion County. The defendant also pointed out that Salem is the county seat of Marion County, that Belleville is the county seat of St. Clair County, and that Salem is approximately 60.4 miles from Belleville.

¶ 11    The plaintiff filed a memorandum in opposition to the defendant's forum motion, along with supporting documents. The plaintiff argued that the forum motion should be denied because St. Clair County was a convenient forum for the trial of his case, and because the defendant failed to show that the relevant private and public interest factors strongly favored a transfer to Marion County. The plaintiff noted that the defendant had a service facility in Dupo, St. Clair County, Illinois; that the records regarding the subject locomotive's maintenance history were maintained at the Dupo facility; that Glenn Elliot, the supervisor who inspected the locomotive within hours after the accident, resided in Swansea, St. Clair County, Illinois; and that Elliot works out of the service facility in Dupo. The plaintiff also pointed out that there were two other maintenance foremen who

were familiar with the maintenance and inspections involving the subject locomotive, and that one resided in Madison County, Illinois, and the other resided in Festus, Missouri. The plaintiff indicated that the claims employee who investigated the circumstances surrounding the plaintiff's fall resides in St. Louis County, and works in the defendant's claims department in St. Louis, Missouri; and that the defendant maintains general offices, including its claims department, in the city of St. Louis.

¶ 12 In addition, the plaintiff pointed out that during discovery, he requested an inspection of the subject locomotive, and the defendant elected to produce the locomotive in St. Clair County for the convenience of the parties. The plaintiff also noted that the defendant had exercised its right to have the plaintiff examined by a physician, whom the defendant anticipated would be called as its own expert witness, and that the defendant chose a doctor who resided in, and maintained his office, in St. Louis, Missouri, rather than a physician who was located in or near Marion County. The plaintiff mentioned that counsel for both parties had offices in St. Clair County. The plaintiff argued that St. Clair County has an interest in this case because the defendant has a substantial presence in St. Clair County, and because the defendant conducts inspections and maintenance of its locomotives in St. Clair County. The plaintiff further argued that the dockets in the St. Clair County circuit court are not congested, and that his case could be tried expeditiously and less expensively in St. Clair County.

¶ 13 The defendant's forum motion was called for hearing on March 3, 2015. After considering the arguments of counsel, the court took the matter under advisement. On March 4, 2015, the court entered an order denying the motion to transfer. The order, in

6

its entirety, states: "Motion to Transfer for *Forum Non Conveniens* basis is denied." The defendant filed a timely petition for leave to appeal under Illinois Supreme Court Rule 306, and we granted the petition.

¶ 14                                    ANALYSIS

¶ 15    On appeal, the defendant contends that the circuit court abused its discretion in denying its motion to transfer based on *forum non conveniens*.

¶ 16    *Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness, and sensible and effective judicial administration. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441, 848 N.E.2d 927, 934 (2006). The doctrine allows a circuit court to decline jurisdiction of a case when it appears that another forum can better serve the convenience of the parties and the ends of justice. *First American Bank v. Guerine*, 198 Ill. 2d 511, 515, 764 N.E.2d 54, 57 (2002). A trial court is vested with considerable discretion in determining whether to grant a *forum non conveniens* motion, and its ruling will not be reversed unless it can be shown that the court abused its discretion in balancing the relevant public and private interest factors. *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934. A trial court abuses its discretion where no reasonable person would take the view adopted by the court. *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934.

¶ 17    In evaluating a *forum non conveniens* issue, the circuit court must consider all relevant private interest factors and public interest factors, and evaluate the total circumstances of the case, without emphasizing any single factor. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. The private interest factors are not weighed against the

7

public interest factors, and each case must be considered on its own unique facts. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935.

¶ 18    Factors of private interest include the convenience of the parties, the relative ease of access to sources of proof, the accessibility of witnesses, and all other practical considerations that make the trial of a case easy, expeditious, and less expensive. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 516, 764 N.E.2d at 58.    Factors of public interest include the interest in deciding controversies locally, the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation, and the administrative difficulties presented by adding additional litigation to a congested court docket. *Langenhorst*, 219 Ill. 2d at 443-44, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 516-17, 764 N.E.2d at 58.    The defendant has the burden to show that the balance of relevant private and public interest factors strongly favors transfer to another forum. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935.

¶ 19    Before analyzing the relevant public and private interest factors, the circuit court should consider how much deference to give to the plaintiff's choice of forum.    The plaintiff has a substantial interest in selecting the forum for his case, and the plaintiff's choice of forum should not be disturbed unless other factors strongly favor transfer.  See *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938; *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58.  That said, the plaintiff's choice of forum is not entitled to the same weight in all cases.  The plaintiff's choice of forum is given somewhat less deference when the plaintiff chooses a forum other than his home forum or the location where some part of

8

the action arose. *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 59. Less deference, however, does not mean no deference. *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59. The defendant has the burden to show that the plaintiff's chosen forum is inconvenient to the defendant, and that another forum is more convenient to all parties. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59. In doing so, however, the defendant may not argue that the plaintiff's chosen forum is inconvenient to the plaintiff. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59.

¶ 20 Our supreme court has recognized that *forum non conveniens* jurisprudence was cultivated in an effort to curtail forum shopping by plaintiffs. *Guerine*, 198 Ill. 2d at 521, 764 N.E.2d at 61. Forum shopping has been looked on with disfavor because it has the potential to burden communities with litigation over disputes that arose elsewhere. See *Guerine*, 198 Ill. 2d at 520-21, 764 N.E.2d at 61. Our supreme court has also recognized that forum shopping is not employed exclusively by the plaintiffs' bar, and that both plaintiff's counsel and defense counsel engage in tactical maneuvers to obtain a forum that will enable them to achieve the best result for their clients, while all other considerations of inconvenience are secondary. *Guerine*, 198 Ill. 2d at 521, 764 N.E.2d at 61.

¶ 21                     Plaintiff's Choice of Forum

¶ 22 With these principles in mind, we first consider what deference is due the plaintiff's choice of forum. Every choice of forum must rise or fall on its own unique set of facts. In this case, the plaintiff originally filed his action in the circuit court of Marion

9

County, which sits in Salem, Illinois. After some period for discovery, the plaintiff voluntarily dismissed his case in Marion County, as permitted under section 2-1009 of the Code of Civil Procedure. 735 ILCS 5/2-1009(a) (West 2014) (a plaintiff may, at any time before trial, upon notice and payment of taxable costs, dismiss his case without prejudice). Thereafter, the plaintiff refiled his case in the circuit court of St. Clair County, which sits in Belleville, Illinois. Again, the plaintiff's actions were in accordance with our venue statutes and other rules of civil procedure. St. Clair County, however, was the plaintiff's second choice of forum.

¶ 23    Relying on the supreme court's decision in *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 19, 987 N.E.2d 355, and this court's decision in *Laverty v. CSX Transportation, Inc.*, 404 Ill. App. 3d 534, 956 N.E.2d 1 (2010), the defendant contends that St. Clair County is entitled to little deference because it is the plaintiff's second choice of forum, and because it has no connection to the litigation. The defendant further contends that the facts and circumstances in this case are analogous to *Fennell*, and that *Fennell* requires that this case be transferred to Marion County. We disagree. If we were to limit our consideration to the procedural tools used by the plaintiff in this case, the circumstances might appear, in a very narrow sense, to be analogous to those in *Fennell*. After taking full measure of the circumstances herein, however, we conclude that this case is readily distinguishable from both *Fennell* and *Laverty*, and that the supreme court's decisions in *Langenhorst* and *Guerine* are closer, factually, to the instant case, and will better guide our analysis.

10

¶ 24　In *Fennell*, the plaintiff alleged he had been exposed to asbestos during his lifetime of work with the defendant railroad. The plaintiff initially filed his lawsuit in his home forum of Mississippi. After the case had been pending for three years, he voluntarily dismissed it without prejudice, and then refiled it in St. Clair County. *Fennell*, 2012 IL 113812, 987 N.E.2d 355. During discovery, the plaintiff acknowledged that he had never been in St. Clair County, Illinois, and could not state that any of his injuries arose in Illinois. The only connections the litigation had with Illinois were that the defendant's risk manager was located there, and that the plaintiff's expert witness and his attorney's office were located there. The defendant filed a motion to dismiss the case based on interstate *forum non conveniens*. The circuit court denied the defendant's motion to dismiss after evaluating some, but not all, of the private and public interest factors required for consideration in determining the most appropriate forum. The circuit court's order was affirmed on appeal (*Fennell v. Illinois Central R.R. Co.*, 2012 IL App (5th) 100504, 964 N.E.2d 158), but reversed by our supreme court. In its review of the circuit court's order, the supreme court voiced concern that the circuit court had not considered *all* of the private and public interest factors in making its determination of whether St. Clair County was the more convenient forum. The supreme court reminded the trial courts to include *all* of the relevant public and private interest factors in their analysis, and to evaluate the total circumstances of the case in determining whether the balance of factors strongly favors dismissal. *Fennell*, 2012 IL 113812, ¶ 24, 987 N.E.2d 355.

¶ 25    Next, the supreme court turned to the question of what deference to accord the plaintiff's choice of forum. The supreme court noted that the plaintiff had originally filed his case in Mississippi, his home forum. After dismissing his cause of action in Mississippi, the plaintiff then filed his case in Illinois. The supreme court found there was nothing in the record to indicate that the parties' abilities to conduct discovery or engage in other pretrial matters was unduly hampered by proceeding in a Mississippi court. *Fennell*, 2012 IL 113812, ¶ 25, 987 N.E.2d 355  Based upon this subsequent filing, the supreme court held that the circuit court should have accorded "diminished deference *** to what was plaintiff's *second* choice of forum." (Emphasis in original.) *Fennell*, 2012 IL 113812, ¶ 25, 987 N.E.2d 355. The supreme court then pointed out that the plaintiff's choice of an Illinois forum was entitled to less deference because the plaintiff did not reside in Illinois, and the plaintiff had not worked in Illinois. Therefore, despite the fact that the plaintiff's claim alleged injuries as a consequence of repetitive exposure that would have occurred over time, in different locales, it was clear that the cause of action did not arise in Illinois. After taking all of these circumstances into account, along with the fact that Illinois was the plaintiff's second filing, the supreme court held that the plaintiff's choice of Illinois should be granted "far less deference." (Emphasis omitted.) *Fennell*, 2012 IL 113812, ¶ 26, 987 N.E.2d 355. Thereafter, the supreme court went through the balancing analysis of all of the relevant private and public interest factors. The residence of the plaintiff, the potential locations of the alleged injury, and the location of the witnesses all weighed in favor of the convenience of Mississippi over Illinois. Further, the supreme court noted that, "[i]f Illinois had any

12

relevant or practical connection with this litigation, then it would have an interest in providing a forum." *Fennell*, 2012 IL 113812, ¶ 46, 987 N.E.2d 355. Ultimately, after completing its analysis, the supreme court concluded that the factors strongly favored dismissal of the Illinois case in favor of a Mississippi forum.

¶ 26    We turn next to *Laverty*, which, like *Fennell*, was also an asbestos exposure case filed in Madison County, Illinois, under the FELA. *Laverty*, 404 Ill. App. 3d 534, 956 N.E.2d 1. The plaintiff's decedent had been employed by the defendant as a railroad fireman and engineer. Over the course of his long career, he worked on engines throughout Michigan and Ohio. *Laverty*, 404 Ill. App. 3d at 535, 956 N.E.2d at 3. The defendant filed a motion to dismiss based on interstate *forum non conveniens*, arguing that a trial in Michigan would be more convenient. *Laverty*, 404 Ill. App. 3d at 535, 956 N.E.2d at 4. During the hearing on the defendant's motion, the plaintiff conceded that the decedent had not been exposed to asbestos in Illinois, and that no witnesses were located in Illinois. *Laverty*, 404 Ill. App. 3d at 536, 956 N.E.2d at 4. The trial court denied the motion to dismiss. On appeal, a panel of this court, with one justice dissenting, reversed the decision of the circuit court, finding that Michigan was the more appropriate forum. *Laverty*, 404 Ill. App. 3d 534, 956 N.E.2d 1.

¶ 27    In a well-reasoned dissent, Justice Goldenhersh, relying on *Langenhorst*, stated that the appropriate focus of a *forum non conveniens* motion is whether the defendant has met its burden of showing that the alternative forum urged by the movant is substantially more convenient than the forum chosen by the plaintiff. *Laverty*, 404 Ill. App. 3d at 541-42, 956 N.E.2d at 9-10 (Goldenhersh, P.J., dissenting). Justice Goldenhersh argued that

13

the majority, in their consideration of the defendant's *forum non conveniens* motion, improperly focused on whether Illinois was the appropriate state to litigate the controversy, rather than whether the defendant's choice of an alternative forum was substantially more convenient, after balancing the private and public interest factors, and after consideration of the amount of deference to be given to the plaintiff's choice of forum. *Laverty*, 404 Ill. App. 3d at 541-42, 956 N.E.2d at 9-10 (Goldenhersh, P.J., dissenting). As aptly described in the dissent, the majority's focus suggested that it was plaintiff who had to justify his choice of Illinois as the forum state. Justice Goldenhersh indicated his belief that the majority had improperly shifted the burden away from the defendant, which was counter to the focus prescribed in *Langenhorst*, that it is the defendant's burden to show that the balance of relevant private and public interest factors strongly favors transfer to the alternative forum chosen by the defendant. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Laverty*, 404 Ill. App. 3d at 541-42, 956 N.E.2d at 9-10 (Goldenhersh, P.J., dissenting). In addition, the majority in *Laverty* placed too much emphasis on the situs of injury or exposure, and the fact that the plaintiff resided outside of Illinois. This runs afoul of *Guerine*. *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59 (in ruling on a *forum non conveniens* motion, the trial court must evaluate the total circumstances of the case, without placing central emphasis on any one factor). We have reexamined *Laverty* in light of the issues raised in this appeal. In doing so, we noted that the majority in *Laverty* followed the *forum non conveniens* analysis set forth in *McGinty v. Norfolk Southern Ry. Co.*, 362 Ill. App. 3d 934, 841 N.E.2d 987 (2005), and that *McGinty* was decided prior to our supreme court's decision in *Langenhorst*. Clearly, the

14

*forum non conveniens* analysis in *Langenhorst* applies here. Therefore, because we believe that the majority's reasoning in *Laverty* is at odds with the pronouncements by our supreme court in *Langenhorst* and *Guerine*, we decline to follow it. In doing so, we are not indicating that the result in *Laverty* was in error. We simply believe that the pronouncements are not in accord with our supreme court's guidance on *forum non conveniens* jurisprudence, as set forth in *Langenhorst* and *Guerine*.

¶ 28   The case *sub judice* is not an asbestos case, nor is it a repetitive injury case. Nevertheless, as we previously noted, some of the procedural facts in the case at bar are similar to those in *Fennell*. In both *Fennell* and this case, the plaintiff initially filed his action in his home forum. After taking a dismissal without prejudice, the plaintiff refiled his case in a forum other than his home forum or the place of injury. The similarities, however, end there, as the case at bar is distinct from *Fennell* and *Laverty*. In contrast to *Fennell*, the plaintiff's chosen forum of St. Clair County has a substantial connection to the litigation. The facts obtained through discovery indicated that inspections, maintenance, and service of the subject locomotive were routinely performed by mechanics who worked out of the Dupo Service Track located in St. Clair County, Illinois. These mechanics worked under the direction of the supervisors at the Dupo Service Track offices in St. Clair County. These facts are particularly significant because part of the plaintiff's claim arises from the defendant's alleged failures to comply with the LIA. As previously noted, the LIA provides that:

> "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances-

15

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter." 49 U.S.C. § 20701 (2012).

¶ 29    In accordance with the provisions in the LIA, the defendant's personnel in St. Clair County were required to inspect and maintain the subject locomotive, and other locomotives, so that the equipment was safe to operate, without unnecessarily causing injury to railroad employees and others. While the record is unclear as to whether the subject locomotive was actually inspected and serviced at the Dupo Service Track, it appears uncontroverted that the inspections and maintenance were performed by the mechanics who worked out of the Dupo Service facility, and that the service records were entered, maintained and are stored at the Dupo facility. In this case, there is testimony and documentary evidence located in St. Clair County relevant to the plaintiff's proofs regarding alleged violations of the LIA. Indeed, these violations may have occurred in St. Clair County. Given the allegations in the plaintiff's complaint, St. Clair County has a substantial connection to this case because it is a site where part of the plaintiff's cause of action arose. *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 120, 975 N.E.2d 236.

¶ 30    In this case, the plaintiff initially chose his home forum, and the site where he was injured, to file his case. The plaintiff has claimed that he first learned, during the discovery process, that the maintenance and inspection records were located in St. Clair County. There is no reason in the record for us to presume that plaintiff would have

16

known where all of the documents would have been located prior to his injury and the initiation of his lawsuit. Nevertheless, the plaintiff dismissed his initial cause of action and refiled it in St. Clair County. St. Clair County is the plaintiff's second choice of forum, but, unlike *Fennell*, it is a forum with a significant connection to the litigation. As such, we believe it should be accorded "somewhat less deference," but that does not mean no deference. *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938. Under the unequal balancing test, the plaintiff's choice of forum is still given some deference, and here, the battle over forum starts with the plaintiff's choice in the lead. *Guerine*, 198 Ill. 2d at 521, 764 N.E.2d at 61.

¶ 31 Having determined the amount of deference due plaintiff's choice of forum, we now turn our attention to the private and public interest factors which determine the convenience to the litigants. Our supreme court has recognized that the doctrine of *forum non conveniens* depends largely on the context in which the convenience of the parties is considered. *Guerine*, 198 Ill. 2d at 526, 764 N.E.2d at 63. "Today, we are connected by interstate highways, bustling airways, telecommunications, and the world wide web." *Guerine*, 198 Ill. 2d at 525, 764 N.E.2d at 63. That pronouncement was some 14 years ago, and today, aided by advancements in technology, our world is even smaller.

¶ 32                     Private Interest Factors

¶ 33 Turning to the private interest factors, we initially consider the convenience of the parties. The plaintiff resides in Marion County, but as previously noted, the defendant may not prevail on a forum motion by asserting that a trial in the plaintiff's chosen forum is inconvenient for the plaintiff. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935. The

17

defendant is a transportation company with headquarters in Omaha, Nebraska. It operates in several states, and has offices and facilities in both Marion County and St. Clair County. The defendant provides freight-hauling services on tracks which run through Marion County and St. Clair County. As previously discussed, the defendant maintains a large service facility in Dupo, Illinois, and this service track is responsible for maintaining the locomotives in a condition that will not harm others. Therefore, this factor is neutral, in that both counties are convenient to the parties.

¶ 34    Next, we consider the relative ease of access to testimonial, documentary, and other evidence. In this case, the plaintiff was injured in Salem, Illinois. No one witnessed the plaintiff's fall. At the time of the incident, two crew members, Kevin Flanigan and William McDaneld, were working with the plaintiff. These crew members were identified as preoccurrence and postoccurrence witnesses. Flanigan resides in Centralia, Illinois, located in Clinton County. He lives approximately 16 miles from the Salem courthouse and 49 miles from the courthouse in Belleville. McDaneld resides in Marion County. He would have a 60-mile commute to Belleville. Another postoccurrence witness, Randy Brubaker, also lives in Marion County, and would have a 60-mile commute to Belleville.

¶ 35    The plaintiff's injury was reported to his supervisor, T. Andy Brown. Brown is no longer employed by the defendant, and he currently resides in Pulaski, Tennessee. Pulaski, Tennessee, is approximately 326 miles from Salem and 368 miles from Belleville. James Crawford, the defendant's claims department employee who interviewed the plaintiff's crew, works in the defendant's offices in St. Louis, Missouri,

18

and is a resident of St. Louis County, Missouri. St. Louis is approximately 74 miles from Salem and 17 miles from Belleville.

¶ 36 Following the accident, Glen Elliot, a supervisor who works out of the Dupo Service Track facility, was summoned to Salem to inspect the subject locomotive. Elliot is a resident of Swansea, St. Clair County, Illinois. Elliot's commute to the St. Clair County courthouse would be less than 2 miles, and his commute to Marion County would be approximately 60 miles.

¶ 37 Because this action includes a claim under the LIA, the subject locomotive's history of inspections, maintenance, and repairs is significant. Records of the "shop history" on the locomotive indicate that it was inspected and serviced during the months before, and shortly after, the plaintiff's injury. The work performed on the locomotive was scheduled from the Dupo Service Track. Mechanics from the Dupo Service Track performed the inspections, and the service work. Further, the records regarding the service history for the subject locomotive are maintained at the Dupo Service Center in St. Clair County, Illinois. The records also show that Elliot and two foremen, John McCarthy and John Foltz, made entries into the subject locomotive's shop history. McCarthy resides in Bethalto, Illinois, which is approximately 85 miles from Salem and 33 miles from Belleville. Foltz resides in Festus, Missouri, which is approximately 108 miles from Salem and 60 miles from Belleville.

¶ 38 The plaintiff received medical care at Salem Hospital in Marion County. His family physician is located in Marion County, and his treating orthopedic surgeon is located in Mount Vernon, Illinois. Mount Vernon is located in Jefferson County, and is

19

approximately 22 miles from Salem and 65 miles from Belleville. The defendant retained a physician to examine the plaintiff, and this physician is located in St. Louis County, Missouri. The office of the retained expert is 28 miles from Belleville and 87 miles from Salem.

¶ 39   In summary, the plaintiff and the preoccurrence and postoccurrence witnesses are located in Marion County and Jefferson County. The plaintiff's supervisor is located in Tennessee. The witnesses who investigated the accident, and the documentary evidence are located in St. Clair County, and St. Louis, Missouri. The testimonial and documentary evidence regarding the condition of the subject locomotive is concentrated in St. Clair County. The medical testimony and records are located in Marion County, Jefferson County, and St. Louis County. The plaintiff's employment, earnings, and retirement information, is located in St. Louis, Missouri. Therefore, St. Clair County is closer to all of the service information on the subject locomotive, the employee-witness who investigated the oily substance after the plaintiff's fall, the defendant's claims' department information, the plaintiff's proof-of-wage loss documentation, and the defendant's choice of an expert physician. According to the record, only a few of the pre- and postoccurrence witnesses still reside in or near Marion County. Although the plaintiff's medical care occurred in both Marion County and Jefferson County, we recognize that treating physicians often do not appear at trial, as most prefer to have their testimony recorded by way of deposition. In this case, as in *Guerine*, the potential trial witnesses and other sources of proof are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the

20

litigation. *Guerine*, 198 Ill. 2d at 526, 764 N.E.2d at 64. Furthermore, the defendant has not demonstrated any impediment to accessing sources of testimonial and documentary evidence if the trial is held in St. Clair County. See *Langenhorst*, 219 Ill. 2d at 450, 848 N.E.2d at 939 ("None of defendants' arguments assert any real inconvenience to anyone or any practical problems militating against trying this case in St. Clair County."). In light of the foregoing, we find that this factor slightly favors St. Clair County.

¶ 40    Another private interest factor is the possibility of viewing the accident scene. This factor is not concerned with the necessity of viewing the premises, but rather the possibility of viewing the premises, if appropriate. *Langenhorst*, 219 Ill. 2d at 448-49, 848 N.E.2d at 938. In a case where the accident scene has been substantially changed, or it is difficult to identify the site where the injury or exposure occurred, a view of the scene may not be appropriate. See *Langenhorst*, 219 Ill. 2d at 448-49, 848 N.E.2d at 938 (view of accident scene would not be appropriate or improve a jury's understanding of the case where rail crossing had substantially changed since the day of the accident), but *cf.* *Fennell*, 2012 IL 113812, ¶ 37, 987 N.E.2d 355; *Laverty*, 404 Ill. App. 3d at 538, 956 N.E.2d at 6 (emphasizing the possibility of viewing location of alleged exposure as an important consideration, and that the appropriateness or necessity of viewing the premises is a decision within the discretion of the circuit court).

¶ 41    In this case, the plaintiff was injured inside one of the defendant's locomotives. Therefore, it is a site-specific injury. The site of the injury, however, is mobile. No one has suggested that a view of the Salem yard would be pertinent to any issue, or otherwise appropriate in this case. The possibility of having a jury view the inside of the

21

locomotive may be appropriate, and is a factor to be considered. Based on the defendant's records, the subject locomotive is not stationed in one place. It moves around the defendant's railroad system, and travels throughout a territory that includes Marion County and St. Clair County. The locomotive was inspected by the defendant's employee at the Salem yard immediately after the plaintiff was injured. Then, during the discovery phase of the case, the defendant produced the locomotive for inspection by the plaintiff in St. Clair County. The record shows that the defendant initially scheduled the inspection at the Dupo Service Track, and later changed the location to the yard of its subsidiary, the Alton & Southern Railroad, in East St. Louis, Illinois. Thus, the defendant chose to have the subject locomotive viewed by the parties in St. Clair County, Illinois. As such, the defendant would be hard-pressed to credibly claim that it would be inconvenient to produce the locomotive at a trial in St. Clair County, should the circuit court determine that a view of the locomotive would be appropriate. As such, the defendant has not shown that this factor strongly favors Marion County.

¶ 42 Next, we consider the remaining private interest factors regarding the availability of compulsory service to secure the attendance of unwilling witnesses, the costs to secure the attendance of willing witnesses, and other practical considerations that make the trial of a case easy, expeditious, and inexpensive. In this case, most of the liability witnesses are currently employed by the defendant, and may be compelled to appear through a notice under Illinois Supreme Court Rule 237(b) (eff. July 1, 2005). The plaintiff's treating physicians and medical records are subject to subpoena, whether the subpoenas are issued in Marion County or St. Clair County.

¶ 43 The costs of securing the attendance of the employee-witnesses would almost certainly balance out whether the trial occurs in St. Clair County or Marion County. Given that the distance between Salem and Belleville is approximately 60 miles, it is unlikely that an overnight stay would be required for any witness, aside from Mr. Brown. Mr. Brown resides in Tennessee. If he traveled by air, he would likely fly into Lambert International Airport in St. Louis. Lambert Airport is closer to Belleville than Salem, and there are many accommodations between Lambert Airport and Belleville. As noted previously, we recognize that in this type of litigation, the plaintiff's treating physicians and the defendant's expert physicians rarely appear live at trial. Medical testimony is more commonly introduced through evidence depositions, as the parties would likely incur significant expenses should their medical witnesses appear live. This is true whether the trial is held in Marion County or St. Clair County. Finally, we note that the attorneys for both parties have their offices in St. Clair County. Although this factor does not carry great weight, it remains a factor that falls within the other practical considerations that make a trial easy, expeditious, and inexpensive. The remaining private interest factors slightly favor St. Clair County.

¶ 44                          Public Interest Factors

¶ 45 We now consider the public interest factors. Initially, we note that the plaintiff's claim against the defendant does not involve a particularly localized controversy. The plaintiff was injured in Marion County, but the injuries were allegedly caused by a defective condition in a locomotive. The locomotive moves throughout the defendant's

23

system. The defendant is a railroad corporation with its corporate headquarters in Omaha, Nebraska.

¶ 46   Next we consider whether St. Clair County has a sufficient connection to this case to warrant the burden of a trial on the citizens and the circuit court of St. Clair County. As previously noted, the defendant has a significant presence in St. Clair County. The subject locomotive, and other locomotives within the defendant's system, are routinely inspected and serviced by mechanics who perform their work out of, or are dispatched from, the Dupo Service Track. The scheduling of inspections and maintenance is administered and documented by supervisors who work out of the Dupo facility. Inspection and maintenance records are created and kept at the Dupo facility. As previously noted, much of the inspection and maintenance work is governed under the LIA, and the plaintiff's complaint alleges violations of the LIA. Based on the record, St. Clair County has an interest in determining whether the defendant is properly identifying and repairing any hazardous defects in locomotives, and locomotive equipment, used by its employees. St. Clair County has a sufficient interest in the case to justify the expense of trial and the imposition of jury service on its citizens. Certainly, Marion County also has an interest in this case because one of its residents was injured on a locomotive there. In this case, it was the locomotive that was alleged to have been poorly maintained. Therefore, this factor does not strongly favor a transfer to Marion County.

¶ 47   We next consider the matter of docket congestion. We note that each of the parties has relied on certain select statistics within the Annual Report of the Illinois Courts that might, if considered in isolation, favor their respective choice of forum. A

24

review of the Annual Report of the Illinois Courts, which the parties referenced, indicates that between 2010 and 2014, the case clearance rates in the Twentieth Judicial Circuit, including St. Clair County, have been higher than the clearance rates in the Fourth Judicial Circuit, including Marion County. In 2014, Marion County reported four law cases disposed of by verdict, while St. Clair County reported three law cases disposed of by verdict. The average time in months from filing to verdict for those cases was 40.8 in Marion County and 36.6 in St. Clair County. The record does not show that St. Clair County's dockets are more congested than Marion County's dockets. Moreover, the trial court is in the best position to consider any administrative problems in relation to its own docket or its ability to try the case in an expeditious manner. *Langenhorst*, 219 Ill. 2d at 451, 848 N.E.2d at 939. Based on the statistics, this factor does not strongly favor a transfer to Marion County.

¶ 48 Considering all relevant private and public interest factors, the balance of factors does not weigh strongly in favor a transfer of this case to Marion County. In this case, like *Guerine*, the potential trial witnesses and other sources of proof are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation. *Guerine*, 198 Ill. 2d at 526, 764 N.E.2d at 64. The balance of factors must strongly favor transfer of the case before the plaintiff can be deprived of his chosen forum, and this is not such a case. *Guerine*, 198 Ill. 2d at 526, 764 N.E.2d at 64. The circuit court's decision to deny the defendant's motion to transfer based on *forum non conveniens* was not an abuse of discretion.

25

¶ 49    Finally, we believe that it is necessary to comment on the circuit court's order in this case.   The circuit court failed to provide any findings or set forth its analysis regarding the public and private interest factors, either during the motion hearing or in its written order.   Recently, there has been some discussion regarding whether a circuit court's exercise of discretion can be adequately reviewed in the absence of an analysis of the *forum non conveniens* factors.   See *Fennell*, 2012 IL 113812, ¶¶ 75-76, 987 N.E.2d 355 (Kilbride, C.J., dissenting upon denial of rehearing) (trial court's exercise of its discretion cannot be reviewed adequately when several of the *forum non conveniens* factors are not included in the analysis, and a remand to the trial court for express findings on the omitted factors would be appropriate and consistent with the supreme court's reminder to include all factors in the analysis); see also *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 47, 13 N.E.3d 194; *Pendergast v. Meade Electric Co.*, 2013 IL App (1st) 121317, ¶¶ 23-27, 996 N.E.2d 34.

¶ 50    In the pending case, the trial court's analysis was not incomplete, it was wholly absent.   Nevertheless, we proceeded to examine each of the relevant factors because the facts pertinent to the analysis were largely uncontroverted.   A court's failure to provide an adequate analysis will not always be a basis for reversal.   See *Estate of Rath v. Abbott Laboratories, Inc.*, 2012 IL App (5th) 100096, ¶ 23, 968 N.E.2d 1247 (the issue is not the detail of the underlying order, but whether the circuit court abused its discretion).   That said, we believe that judicial economy is better served when the circuit court provides the parties, as well as reviewing courts, with its analysis of the relevant factors when deciding a *forum non conveniens* motion.   We echo the exhortations of our supreme court

26

to circuit courts to include all of the relevant private and public interest factors in the analyses (*Fennell*, 2012 IL 113812, ¶ 24, 987 N.E.2d 355), and to leave a better record of their decision-making process (*Guerine*, 198 Ill. 2d at 520-21, 764 N.E.2d at 60-61). In any motion proceeding, the parties to the litigation bear some responsibility to aid the court in issuing its orders. Therefore, we urge the trial bar to aid the trial court with proposed orders, and respectfully request the circuit courts to issue specific rulings setting forth the analysis of all the relevant private and public interest factors. Judicial economy is best served by the clarity of the trial court's order.

¶ 51                            CONCLUSION

¶ 52    After reviewing the record, and following the supreme court's reasoning in *Langenhorst* and *Guerine*, we find that the defendant has failed to show that the balance of private and public interest factors strongly favors a transfer of this case to Marion County, or that Marion County is more convenient to all parties. Moreover, it is clear from the record that there are many factors that actually favor St. Clair County as a convenient forum. Therefore, the circuit court did not abuse its discretion in denying the defendant's motion to transfer based on the doctrine of *forum non conveniens*.

¶ 53    Accordingly, the order of the circuit court is affirmed.


¶ 54    Affirmed.


27

2016 IL App (5th) 150116

NO. 5-15-0116

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| DAVID DECKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-L-807 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** July 12, 2016

**Justices:**     Honorable Judy L. Cates, J.

Honorable S. Gene Schwarm, P.J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorneys for Appellant**     Thomas E. Jones, Harlan A. Harla, Thompson Coburn, LLP, 525 West Main Street, P.O. Box 750, Belleville, IL 62222-0750

**Attorney for Appellee**     William P. Gavin, Gavin Law Firm, #17 Park Place Professional Centre, Belleville, IL 62226