2023 IL App (1st) 220802-U

SECOND DIVISION
February 15, 2023

No. 1-22-0802

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| JESSICA BLACK, as Administrator for the Estate of Decedent, PARIS CHANELLE JOHNSON, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 2020 L 001863 |
| HELP AT HOME, LLC (d/b/a Oxford HealthCare) and STATEWIDE HEALTHCARE SERVICES, LLC (d/b/a Oxford HealthCare), | ) ) ) ) ) | The Honorable Preston Jones, Jr., |
| Respondents-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

*HELD*: While petitioner has a substantial right in her choice of forum, and although she alleged institutional as opposed to medical negligence thus perhaps rendering residency and situs of injury less important than usual in a *forum non conveniens* determination, the trial court did not abuse its discretion in granting respondents' motion to transfer this cause where its consideration of all this and its balancing of the relevant private and public interest factors was appropriate based on the particular facts presented.

¶ 1    Following the filing of a first amended complaint at law in Cook County, Illinois, by petitioner-appellant Jessica Black, as Administrator for the Estate of Decedent, Paris Chanelle Johnson (petitioner), respondents-appellees Help At Home, LLC (d/b/a Oxford HealthCare) and Statewide Healthcare Services, LLC (d/b/a Oxford HealthCare) (respondents or as named) filed a motion to dismiss pursuant to *forum non conveniens*. The trial court granted respondents' motion and transferred the instant cause to the circuit court of Panola County, Mississippi. Petitioner appeals, contending that the court erred in balancing the factors involved in this transfer determination.[1] She asks that we reverse the court's decision and remand. For the following reasons, we affirm.

¶ 2                                              BACKGROUND

¶ 3     The facts herein are taken from the record on appeal.[2]

¶ 4    Paris Chanelle Johnson (Paris) was born on June 6, 2016 at Merit Health Northwest Hospital in Mississippi to petitioner, her mother, who at all times relevant herein, lived in Como, Panola County, Mississippi. Paris was born with congenital central hypoventilation

---

[1] Petitioner filed her appeal pursuant to Illinois Supreme Court Rule 306(a)(2). Ill. S. Ct. R. 306(a)(2) (eff. Oct. 1, 2020).

[2] In her reply brief on appeal, petitioner included, essentially, a motion to strike respondents' citations to a portion of the record that was sealed pursuant to petitioner's request, urging that we disregard respondents' statement of facts and various sections of their argument in their response brief. Petitioner argued that the citations were to a page in the record that is a "placeholder for exhibits that were filed in the trial court under seal and not made part of the supporting record on appeal," noting that said "placeholder" was labeled "Exhibit 3 Medical Records To Be Filed Under Seal." We allowed respondents to file a response. Thereafter, petitioner twice attempted to supplement the record; both times, this Court denied her motion, as she failed to follow proper procedure required for the filing of a supplemental record. Petitioner then filed a third motion to supplement the record, and the Court allowed her motion, as that supplemental record was, finally, properly presented and filed. That supplemental record, as described by petitioner herself, contains "certain medical records *** which were submitted to the trial court as Exhibit 3 *** and discussed in the surreply of Appellees." We have reviewed the supplemental record, which consists of 9 pages, including some medical records of decedent. Accordingly, then, it would seem to this Court that any dispute petitioner had when urging the striking of respondents' brief has been resolved, as petitioner has now supplemented the record with the medical records that were presumably at issue.

Ultimately, and regardless of any debate, we note here that we have thoroughly reviewed the entire record on appeal and our decision is based solely on what has been properly presented before this Court.

syndrome (Haddad Syndrome), which, in part, causes severe sleep apnea and requires a tracheostomy and the attachment of the patient to a ventilator while sleeping. Days after her birth, Paris was transferred to LeBonheur Children's Hospital in Memphis, Tennessee, where she remained until February 2018, approximately the first 20 months of her life. Upon discharge, Paris went to live at her home with petitioner, as well as Paris' grandmother, in Mississippi. Petitioner hired home health services from Oxford HealthCare in Mississippi to monitor Paris while she slept, and several different nurses from Oxford attended to her care. Approximately one month later, on March 24, 2018, Louise Hibbler, a 76-year-old home health nurse from Oxford HealthCare who resides in Mississippi, was assigned to monitor Paris. That evening, an incident happened involving Paris' ventilator which resulted in Paris failing to receive proper oxygenation and suffering an anoxic brain injury and acidosis. Paris was taken by ambulance to a local Mississippi hospital and then transported again to nearby LeBonheur in Tennessee, where she later died on May 29, 2018.

¶ 5        Petitioner filed a six-count complaint in Cook County, Illinois, which she later amended, against respondents. Therein, she alleged that Paris was a client of respondents "through their Oxford HealthCare brand." She also asserted that Hibbler was an employee of respondent Help At Home, LLC "and/or" respondent Statewide Healthcare Services, LLC, both of which were doing business as Oxford HealthCare. According to petitioner's amended complaint, Help At Home is a limited liability company with its principal office in Chicago; Statewide, though a Mississippi limited liability company, has its principal office in the same suite as Help At Home; and both did business as Oxford HealthCare in Mississippi, with Help At Home overseeing the activities and employees in Mississippi from its

3

centralized administration in Chicago. Petitioner alleged that Hibbler, who had been assigned to monitor Paris before the incident at issue, had asked "her employer" that it not reassign her to care for Paris again except as a "last resort," but that Hibbler was assigned again to Paris on the night in question, whereupon she failed to properly intervene when the ventilator's alarm went off, thereby causing Paris' death. The first three counts focused on Help At Home, with count I asserting negligence (wrongful death), count II asserting vicarious liability (wrongful death), and count III asserting a survival action; the remaining three counts (counts IV, V, and VI) asserted the same causes of action against Statewide.

¶ 6     Respondent Help At Home filed a motion to dismiss the three counts against it, pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)). It argued that there was no employment relationship between it and Hibbler, insisting Hibbler was an employee of Oxford HealthCare and it did not share any relationship with Oxford, including clients, contracts, supervisors or employees. It further argued that it was a separate and distinct entity from Statewide, and while Statewide did business in Mississippi, it (Help At Home) did not. Help At Home's motion was accompanied by the affidavit of Joel Davis, who claimed to be the chief operating officer and general counsel for Statewide. Therein, Davis stated that Statewide does business as Oxford, its principal operations are in Mississippi, and it conducts business only in Mississippi and Alabama. He further described that Statewide and Help At Home are "sister companies," but that Help At Home does not own or operate Oxford and the two (Statewide and Help At Home) maintain distinct services in different states, such as contracts, territories, licensing, and separate

4

employees, operations, accounts, books and records. Davis stated that Hibbler was employed by Oxford.

¶ 7     Davis was later deposed. During his testimony, he expressed confusion over his actual job title and which entity he worked for directly, Help At Home or Statewide. He also intimated that perhaps both respondents had a payroll system in common, that some of their higher-level employees reported to the same chief executive officer and performed similar duties for both companies at the same time, and that lower-level employees for both companies might share the same handbook. Based on this, petitioner argued that Help At Home and Statewide/Oxford are "a single enterprise" and that, just as Statewide, it was "clear and unambiguous that Help At Home LLC operates in Mississippi."

¶ 8     The trial court denied Help At Home's motion to dismiss. It determined that the issue was whether Help At Home and Statewide/Oxford were one entity, namely, whether they were sufficiently intertwined. Pursuant to Davis' deposition, which it called "confusing and vague," and other relevant documents showing some "intricate involvement" between the two, the court concluded that "there is a genuine issue of material fact at this stage" as to the nature of their relationship and whether Statewide/Oxford was, potentially, a "sister company or a subsidiary" of Help At Home so that the latter could potentially be responsible for Hibbler's conduct as an employee. Thus, it could not dismiss Help At Home from the suit.

¶ 9     Subsequently, respondents filed a joint motion to dismiss pursuant to the doctrine of *forum non conveniens*. In it, they argued that the cause's connection to Cook County was tenuous at best and that the matter should proceed in Mississippi. They pointed to several facts, including that petitioner lives in Mississippi, as did the victim and the only other

5

people present at the time of the incident, namely, Hibbler and Paris' grandmother; Paris was treated in a Mississippi hospital and transferred to a southern Tennessee hospital close thereto; both these hospitals treated her before the incident for the vast majority of her life; emergency services were provided to Paris in Mississippi and Tennessee following the incident; Hibbler's immediate supervisors and other Oxford nurses who provided home health care to Paris were all in Mississippi; and Oxford, from where petitioner hired home health care for Paris, had its primary offices in Mississippi. In response, petitioner argued that all of Oxford's policies and procedures, including hiring, retention of employees, payroll, benefits, and employee policies, were promulgated in Chicago at Help At Home's corporate headquarters, and that its act of reassigning Hibbler to Paris' care despite Hibbler's expressed desire not to be except as a last resort led to Paris' death.

¶ 10    The trial court granted respondents' joint motion. At the outset of its lengthy order, the court noted that the burden was on respondents to show that petitioner's choice of forum was somehow inconvenient to them and that their choice would be more convenient for everyone. It also noted that it was required to examine the totality of the circumstances when evaluating all relevant forum factors. Before doing so, it considered what deference to afford petitioner's choice of forum. Noting that petitioner "does not reside in Cook County and the accident did not occur there," it concluded that her choice of forum should be "afforded minimum deference." Thereafter, the court examined the forum factors. With respect to the private factors, it found the first, convenience of the parties, to be neutral because, though petitioner chose Cook County and Help At Home has its principal office there, "there is an open question regarding the amount of control Help at Home exercises over" Statewide/

6

Oxford, as it had found during the motion to dismiss. Next, it found that the factors of relative ease of access to evidence and other practical problems that make trial easy, expeditious and inexpensive both favored Mississippi. Regarding the former, it cited the majority of medical providers are in Mississippi and southern Tennessee (closer to Mississippi than Cook County), as are Hibbler and Paris' relevant family members, while the only witnesses in Illinois are a few corporate representatives; regarding the latter, more potential witnesses were in Mississippi for the sake of compulsory process and the cost of obtaining attendance, as would be any chance at viewing the premises of the incident. Then, in considering the pertinent public factors, it determined that the factor of deciding localized controversies locally favored Mississippi, since, again, this cause involved a Mississippi resident injured in Mississippi. It found that the factor of unfairness of imposing expense and burden on a county with little connection to the litigation favored Mississippi as well, concluding that while Cook County residents might have some interest since Help At Home has its principal office there, the factor as a whole favored transfer. And, it found the third public factor of administrative difficulties to be neutral, since neither Mississippi nor Tennessee publishes court congestion data comparable to Illinois' annual reports. The court held that, when "[t]aken as a whole, the factors *** strongly favor transfer" and, accordingly, it dismissed the cause and transferred it to the circuit court of Panola County, Mississippi.

¶ 11    Petitioner then appeared in our Court seeking leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(2). See Ill. S. Ct. R. 306(a)(2) (eff. Oct. 1, 2020). We granted her petition and now address her appeal.

¶ 12                                 ANALYSIS

¶ 13     Petitioner contends that the trial court incorrectly transferred this cause to Mississippi. She insists that it failed to consider the falsities in Davis' affidavit, thereby rendering its determination "incomplete," and that it afforded her forum choice an inappropriate amount of deference. Then, she argues that the court did not weigh the forum factors properly, as the cause's ties to Cook County are significant and mandate a Cook County forum.

¶ 14     It is well established that the standard of review with respect to a determination of a *forum non conveniens* motion is abuse of discretion. See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21; accord *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006); *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003); *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 18. Accordingly, on review, we may reverse the circuit court's determination only if it can be shown that the court abused its discretion in balancing the relevant forum factors. See *Langenhorst*, 219 Ill. 2d at 442; *Dawdy*, 207 Ill. 2d at 177. As the most deferential standard, an abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. See *Susman*, 2015 IL App (1st) 142789, ¶ 18. In other words, we will not, and cannot, disturb the actions of the trial court in determining the propriety of a transfer motion unless they are "clearly against logic." *Miranda v. Walsh Group, Ltd.*, 2013 IL App (1st) 122674, ¶ 16. The question before us is not whether we agree with the court's determination, but whether the court "acted arbitrarily, without employing conscientious judgment, or whether, in view of all the circumstances, it exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000); see also *Susman*, 2015 IL App (1st) 142789, ¶ 18, quoting *Vivas v. The Boeing*

*Co.*, 392 Ill. App. 3d 644, 657 (2009) (" 'The issue, then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would' "); *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶¶ 36, 38-40 (explaining that abuse standard for *forum non conveniens* review means reversal may only occur if the trial court abused its discretion in balancing the relevant factors, that an abuse in balancing occurs only where no reasonable person would take the view of the trial court, and that a reviewing court "may affirm a trial court's *forum non conveniens* order on any basis found in the record").

¶ 15        Also well-established are the legal principles and considerations surrounding *forum non conveniens* motions. These motions rest in the equitable doctrine which considers fundamental fairness with respect to the sensible and effective administration of justice. See *Fennell*, 2012 IL 113812, ¶ 12; *Ruch*, 2015 IL App (1st) 142972, ¶ 37. Essentially, it allows a trial court, which otherwise has proper jurisdiction over a cause, to decline jurisdiction and transfer it to another forum after a determination that the other forum would be better suited to hear it. See *Fennell*, 2012 IL 113812, ¶ 12; *Ruch*, 2015 IL App (1st) 142972, ¶ 37. Such a determination involves the balancing of several factors.

¶ 16                              I. Deference to Choice of Forum

¶ 17        Before these factors may even be considered, however, the trial court must first determine how much weight to give a plaintiff's chosen forum. See *Fennell*, 2012 IL 1138112, ¶ 18; accord *Ruch*, 2015 IL App (1st) 142972, ¶ 37 (this consideration is primary before the evaluation of any other relevant factors). The plaintiff has a substantial interest in choosing the forum and, generally, her choice "should rarely be disturbed." *Langenhorst*,

219 Ill. 2d at 442. Accordingly, it has been said that "the battle over forum begins with the plaintiff's choice already in the lead." *First American Bank v. Guerine*, 198 Ill. 2d 511, 521 (2002). This is particularly true when the plaintiff chooses a forum that is her home residence or the site of the accident or injury that is the subject of the litigation. See *Langenhorst*, 219 Ill. 2d at 442. Yet, the plaintiff's choice is not always entitled to the same weight or consideration in all cases. See *Fennell*, 2012 IL 113812, ¶ 18 (citing *Dawdy*, 207 Ill. 2d at 173). For example, when she chooses a foreign forum–one that is not her residence or the location of the accident or injury–her choice is afforded only some deference. See *Ruch*, 2015 IL App (1st) 142972, ¶ 43; see also *Fennell*, 2012 IL 113812, ¶ 18 (citing *Dawdy*, 207 Ill. 2d at 173). While this is not the same as no deference, it is considerably less than if she had chosen her home forum or the site of incident or injury. See *Ruch*, 2015 IL App (1st) 142972, ¶ 45 (citing *Glass v. DOT Transportation, Inc.*, 393 Ill. App. 3d 829, 834 (2009)); see also *Fennell*, 2012 IL 113812, ¶ 12.

¶ 18       At the outset of her appeal, petitioner contends that the trial court failed to afford her choice of forum the required deference to which it was entitled. Her attack is two-fold. First, she challenges the court's reliance on the typically-significant considerations of residence and situs of injury. Her claim in this regard is that the court misconstrued the relevance of these, as her cause of action does not allege medical malpractice involving what took place in Mississippi but, rather, corporate negligence originating from actions taken in Illinois that led to Paris' wrongful death. Additionally, she challenges the standard the court employed in making its determination of deference, claiming it improperly reduced the amount owed and then used an inappropriate standard. We address her latter claim first.

10

¶ 19                              A. Trial Court's "Standard"

¶ 20          In her brief, petitioner notes a portion of the trial court's order wherein, while considering

the deference to give her choice of forum, it stated:

> "When a plaintiff's home forum is chosen, it is reasonable to assume that the
>
> choice is convenient. *Guerine*, 198 Ill. 2d at 517. However, when the plaintiff
>
> chooses a forum other than the one where he resides, that choice is accorded less
>
> deference. *See Langenhorst*, 219 Ill. 2d at 448. Even less deference is afforded when
>
> the injury did not occur in the chosen forum. Because [petitioner] does not reside in
>
> Cook County and the accident did not occur here, [her] venue choice of Cook County
>
> is afforded minimum deference."

From this, petitioner insists that the court "appeared to reduce the amount of deference owed

to [her] choice of forum twice"—once after noting that she and Paris did not reside in Illinois

and then "even less deference" after noting that Paris' death did not occur here. She also

asserts that the court's use of the phrase " 'minimum deference' forms no part of the *forum*

*non conveniens* vernacular in Illinois" and thus shows it did not consider her choice properly.

Petitioner is correct that the *Langenhorst* standard is universally used by our courts. Again, it

states that when a plaintiff chooses a forum that is not her residence or the site of the injury,

her choice is entitled to "*somewhat* less deference." *Langenhorst,* 219 Ill. 2d at 448.

(Emphasis in original.) In describing what that means, the supreme court explained, via a

quote from *Guerine*, which in turn shortened a quote from *Elling v. State Farm Mutual*

*Automobile Ins. Co.*, that " ' "[W]hile the deference to be accorded to a plaintiff regarding his

choice of forum is less when the plaintiff chooses a forum other than where he resides * * *

nonetheless the deference to be accorded is only *less*, as opposed to *none*." ' " (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 448, quoting *Guerine*, 198 Ill d at 521, quoting *Elling*, 291 Ill. App. 3d 311, 318 (1997). The missing portion of that quote is important for our purposes here. That is, while the facts in both *Guerine* and *Langenhorst* concerned only the residences of the plaintiffs, *Elling*'s full quote makes clear that not only a foreign residence, but also a foreign situs of injury, reduces the "lead," or initial deference, a plaintiff's choice of forum would otherwise have. *Elling*'s full quote reads:

> "[W]hile the deference to be accorded to a plaintiff regarding his choice of forum
> is less when the plaintiff chooses a forum other than where he resides <u>or where the</u>
> <u>injury occurred</u>, nonetheless the deference to be accorded is only *less*, as opposed to
> *none*." (Italics in original, underline added.) 291 Ill. App. 3d at 318.

¶ 21        We focus on this to show that we can understand petitioner's concern with what the trial court wrote in its order. However, while we may understand it, we do not agree that it rises to an abuse of discretion so as to cause prejudice and merit our disturbance of its ultimate forum determination. In our view, while some of the court's comments could be concerning in that they do not track black letter *forum non conveniens* principles, they were nothing more than misstatements and no indication that the court considered anything improperly when determining the amount of initial deference to assign petitioner's choice of forum.

¶ 22        First, as for petitioner's "double reduction" claim, while the court's statement that a forum choice that is not a plaintiff's residence deserves less deference was correct, we admit that its statement in the sentence immediately following that, *i.e.*, "Even less deference is afforded when the injury did not occur in the chosen forum," does not track the language of

*Langenhorst* or *Elling*. One could potentially argue that the court used the word "even" to mean "in addition," such that it intended to say foreign residence reduces deference and, in addition, foreign situs of injury reduces deference. However, that is a stretch in light of the language it chose to use. An interpretation similar to petitioner's, namely, that foreign residence reduces deference and foreign situs of injury reduces deference even more or even further, is much more apparent. If this were the trial court's thinking, it would be mistaken.

¶ 23    However, when it made those statements, the court was summarizing quotations from *Langenhorst*. It did so correctly in the first sentence regarding foreign residence and cited *Langenhorst*, but then, admittedly, used the "even less" language in the following sentence regarding foreign situs (and, interestingly, did not provide a citation). Had the court exactly tracked the language used in *Langenhorst/Elling*, there would be no concern here.

¶ 24    But, what is more significant than the court's (poor) word choice is the crux of its deference determination, which does not come until after all this, in the last sentence of the paragraph. There, it stated, "Because [petitioner] does not reside in Cook County and the accident did not occur here, [her] venue choice of Cook County is afforded minimum deference." From this, it is clear that the trial court considered both foreign residence and foreign situs together, and that these, together, afforded her choice of forum less deference than the substantial deference it otherwise would have had, had residence and situs been local. Such consideration by the trial court of both residence and situs is, pursuant to *Elling*, correct. In spite of what it said earlier, at the time of its actual determination, there is no indication that the court considered residence first, made a determination to reduce deference, and then considered situs and determined a further, or second/double, reduction was in order.

While petitioner would like us to infer this, we do not, as it did not use such words, or any similar quantifiable amount or percentage of deference reduction when it made its determination. As inartful as the court's lead-up to its determination was, there is no explicit indication that it improperly reduced its deference twice-over when it made its determination.

¶ 25    Petitioner also challenges the court's use of the phrase, "minimum deference." Of course, once again, we would not be dealing with any of this had the court used, exactly, the *Langenhorst* standard; there is much to be said about uniformity in the law. However, again, we believe this to be nothing more than a misstatement and, even if it were more, it did rise to an abuse of discretion.

¶ 26    The key to the *Langenhorst* standard is what we have consistently repeated: when a plaintiff chooses a forum that is not her residence or the site of the injury, her choice is entitled to "*somewhat* less deference" than it would have had had these factors been local. *Langenhorst*, 219 Ill. 2d at 448. What does "*somewhat* less deference" mean? Again, it means, simply, " '*less*, as opposed to *none*.' " *Langenhorst*, 219 Ill. 2d at 448, quoting *Guerine*, 198 Ill 2d at 521. There is no quantifier here, for example, five-fold less or 30% less. It is logical, then, that as long as there is *some* deference afforded to the plaintiff's choice, *less* (of course) than the substantial amount given to plaintiffs who do choose a forum within their residence or the situs of injury, but not *none*, the *Langenhorst* standard is met. See, *e.g.*, *Malloy v. DuPage Gynecology, S.C.*, 2021 IL App (1st) 192102, ¶ 48; *Decker v. Union Pacific RR Co.,* 2016 IL App (5th) 150116, ¶ 19. When a court gives less deference, that does not mean that it gives no deference. See, *e.g.*, *Taylor v. Lemans Corp.,* 2013 IL App (1st) 130033, ¶ 18.

14

¶ 27        Based on this, we conclude that the trial court's use of the phrase "minimum deference" here, while admittedly not part of the Illinois *forum non conveniens* legal vernacular, did not render its determination of how much deference to initially afford petitioner's choice of forum improper.  Contrary to any insinuation by petitioner, the trial court did not give it "no deference" or even "next to no deference."  The court simply gave it less, which is in accordance with the standard.  "Minimum" is much more akin to "somewhat less" than it is to "none."  The point is, the court recognized that, because petitioner initially chose a forum that was neither her/the decedent's residence nor the situs of injury, her choice could not be afforded the substantial deference it would have otherwise received.  It further recognized that it still owed her choice deference, but in a lesser amount.  That it used the phrase "minimum deference" as opposed to "somewhat less deference" is, essentially, semantics— less, or "minimum," properly indicates less than substantial but not none, and that is what *Langenhorst* requires.

¶ 28                              B. Cause of Action

¶ 29        The other portion of petitioner's challenge to the trial court's initial determination of deference to afford her choice of forum rests, as she says, in the particular cause of action. She challenges the court's reliance on the typically-significant considerations of residence and situs of injury.  She claims that the court should never have found these to even be relevant because her cause of action does not allege a medical malpractice claim against Hibbler or her immediate employer, Oxford (who are in Mississippi).  Rather, she reaffirms that she asserted a corporate negligence action, namely, that respondents' negligent conduct of reassigning Hibbler to monitor Paris after she asked not to be was the act that led to Paris'

15

death, that this act was undertaken in Illinois pursuant to respondents' Illinois-based employment policies and, thus, that her residence or the situs of injury are not important to an initial consideration of the amount of deference to be afforded her choice of forum. In this regard, petitioner potentially has a valid point.

¶ 30        Petitioner's complaint is somewhat unique here because it is not the typical medical malpractice or medical negligence claim. She is not suing Hibbler or anyone who provided Paris directly with medical treatment or home health care, *per se*. Her claim is one of institutional negligence. While Paris' medical care (or lack thereof) occurred in Mississippi, the cause of action petitioner raises against respondents involves their procedures, including employment policies, as corporations—corporations that admittedly share an address in Cook County. It is of no consequence that, at this point in the litigation process, petitioner's claims as to respondents' involvement might only be vague; she was not required to prove up her entire case on a *forum non conveniens* motion. See *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 100 (such a motion is only at a preliminary discovery stage). Accordingly, given the facts that were pled in her complaint, it very well may be that the usual considerations of residence and the situs of injury lack relevance and perhaps should not play a large role in a trial court's consideration of the amount of initial deference to give her choice of forum.

¶ 31        On the other hand, we must note that while petitioner characterizes her complaint as institutional negligence, it cannot be denied that her claims involve wrongful death. The counts in her amended complaint against both respondents state as much; she labels them, in fact, "wrongful death." Our law states that in a wrongful death case, "it is the decedent's

16

residence at the time of death that is of significance" in a *forum non conveniens* analysis. *Bradbury v. St. Mary's Hospital of Kankakee*, 273 Ill. App. 3d 555, 560 (1995). Moreover, where a plaintiff sues in a representative capacity on behalf of a decedent, as petitioner does here, the decedent's county of residence "is entitled to substantial deference." *Schwalbach v. Millikin Kappa Sigma Corp.*, 363 Ill. App. 3d 926, 933 (2005). Taking these principles into account, then, and contrary to petitioner's insistence, residence and situs of injury perhaps should very well remain substantial considerations here.

¶ 32        Ultimately, in consideration of all this, our conclusion with regard to any potential impropriety that may have occurred in the trial court's determination of how much initial deference it was to afford petitioner's choice of forum is this: if any impropriety did occur, it was, in the grand scheme of things, inconsequential. Rather, what is clearly certain is that, again, the court did give petitioner's choice some deference—it was not substantial, but it was not none or next to none. And, what is most important of all is that " 'deference to the plaintiff's choice of forum is but one factor, along with other relevant private and public interest factors, to be considered in the balancing process.' " *Grachen v. Zarecki*, 200 Ill. App. 3d 336, 342 (1990), quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990). Accordingly, whatever the determination as to initial forum deference, our analysis does not end here, as a transfer of forum may still be appropriate if the private and public factors, viewed in totality along with the deference consideration, outweigh the plaintiff's substantial interests and instead strongly favor a defendant's suggested transfer. See *Grachen*, 200 Ill. App. 3d at 342, citing *Griffith*, 136 Ill 2d at 108; see also *Ruch*, 2015 IL App (1st) 142972, ¶¶ 38-40 (we may affirm transfer order on any basis in record).

17

¶ 33    Accordingly, and just as the parties do, we now turn to those factors.

¶ 34                            II.  Private and Public Interest Factors

¶ 35    After the trial court considers the plaintiff's choice of forum, it then evaluates the private

and public interest factors involved in *forum non conveniens* determinations.  The private

interest factors include: the convenience of the parties; the relative ease of access to

testimonial, documentary and real evidence; the availability of compulsory process to secure

the attendance of unwilling witnesses; the costs to secure the attendance of willing witnesses;

the possibility of viewing the site where the accident occurred, if appropriate; and all other

practical considerations that make a trial easy, expeditious and inexpensive.  See *Fennell*,

2012 IL 113812, ¶ 21.  The public interest factors include: the interest in deciding

controversies locally; the unfairness of imposing the burden of jury duty on residents of a

forum with little connection to the litigation; and the administrative difficulties caused by

adding litigation to already congested court dockets rather than resolving the case at its

origin.  See *Fennell*, 2012 IL 113812, ¶ 21.  A court must consider all of these private and

public interest factors.  See *Ruch,* 2015 IL App (1st) 142972, ¶ 48; accord *Fennell*, 2012 IL

113812, ¶ 17.  It must not place too much emphasis on any one factor, nor is it to weigh them

against each other.  See *Langenhorst*, 219 Ill. 2d at 443-44; accord *Dawdy*, 207 Ill. 2d at 175-

76.  Rather, it must balance all of them together and view them within the totality of the

circumstances presented, as each *forum non conveniens* case is unique on its own facts.  See

*Langenhorst*, 219 Ill. 2d at 443-44 ("court must evaluate the total circumstances of the

case"); accord *Fennell*, 2012 IL 113812, ¶ 24.

¶ 36    The burden is on the defendant to show that the relevant private and public interest factors " 'strongly favor' " its choice of forum and merit disturbing the plaintiff's initial choice. *Langenhorst*, 219 Ill. 2d at 444, quoting *Griffith*, 136 Ill. 2d at 107; accord *Fennell*, 2012 IL 113812, ¶ 17. Notably, the defendant cannot simply claim that the choice of forum is inconvenient to the plaintiff. *Langenhorst*, 219 Ill. 2d at 44. Instead, it must prove that the balance of factors strongly favors transfer, *i.e.*, that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. See *Fennell*, 2012 IL 113812, ¶ 20; *Langenhorst*, 219 Ill. 2d at 444. "Although this is a difficult standard for a defendant to meet, 'it does not foreclose *legitimate* transfers when the balance of factors *strongly* favors litigation in another forum.' " (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 443, quoting *Guerine*, 198 Ill. 2d at 521.

¶ 37    Petitioner begins with the first private factor and asserts that the trial court erred in finding the convenience of the parties did not favor Cook County. She claims that, based on Davis' false affidavit which the court inappropriately ignored, and its prior determination on the motion to dismiss that respondents were one entity located and doing business in Illinois, this factor "strongly weighs against transfer." However, as she wholly mischaracterizes the record, we disagree.

¶ 38    The trial court did not find that convenience of the parties favored or disfavored transfer of this cause. Instead, it found that this factor was "neutral" and did not weigh strongly either for or against transfer. We do not find that the trial court abused its discretion in making this neutral determination. Contrary to petitioner's insistence, it never determined that respondents were one entity doing business in Cook County at any point in the litigation.

19

Rather, in direct opposition, the record shows that the court specifically found there was a genuine issue of fact as to the nature of the relationship between respondents and which of them controlled Oxford's employment policies or decisions—the crux of petitioner's amended complaint. Because of this very reason, the court could not grant Help At Home's motion to dismiss. Moreover, the court did not, as petitioner asserts, ignore Davis' affidavit. Instead, the court agreed during its denial of Help At Home's motion to dismiss that Davis' subsequent deposition testimony was vague and confusing in comparison to the affidavit he provided earlier. It was because of this very reason, the court stated, that it could not grant the motion. Later, during its evaluation of the convenience factor in the instant forum motion, the court revisited all this to note that while Help At Home has a principal office in Cook County, Statewide appears to be based in Mississippi where it operates Oxford, from which petitioner hired Hibbler, and there remains "an open question" regarding the amount of control Help At Home exercises over Statewide per the inconsistencies in Davis' testimony. Accordingly, while the court could not say Cook County was inconvenient to petitioner as that was her choice, it likewise could not say that the mere fact that Help At Home has a corporate office in Cook County, without more, mandated a Cook County forum. See *Dawdy*, 207 Ill. 2d at 182 (merely conducting business in a county does not necessarily affect the issue of *forum non conveniens*, nor does the presence of a corporate defendant's registered agent; this "is not a dispositive factor" and a court is "to look beyond the criteria of venue when it considers the relative convenience of a forum"); accord *Smith v. Jewel Food Stores, Inc.*, 374 Ill. App. 3d 31, 34-35 (2007). This, combined with the open question of how intertwined respondents are, if at all, does not propel the *forum non conveniens* issue

20

strongly either way. Therefore, we cannot say that the trial court's determination that convenience of the parties was a neutral factor was unreasonable.

¶ 39 Next, petitioner asserts that the trial court erred in concluding that the second private factor, relative ease of access to evidence, favored transfer. She insists that, because this is a corporate negligence action, the "critical witnesses" are in Illinois where the decision to reassign Hibbler took place, and not in Mississippi which accounts only for Paris' treaters, who are "far less importan[t]" since medical negligence is not being alleged.

¶ 40 In examining this factor, the trial court, citing *Ruch*, 2015 IL App (1st) 142972, ¶¶ 61, commented that in today's technological age, document transfer is instantaneous and occurs at the touch of a button, thereby shifting the focus of ease of access away from real and demonstrative evidence and more toward the availability of testimonial evidence. Then, after pointing out that neither party had supplied a complete list of prospective witnesses, it noted that the majority of witnesses involved in this matter, including all those who provided medical treatment, as well as decedent, her family, and Hibbler, were all in or closer to Mississippi, while "[t]he only potential witnesses with ties to Cook County are corporate representatives for" respondents. "Taken as a whole," it determined this factor favored transfer.

¶ 41 We agree with the trial court that, when all the circumstances presented are considered together, relative ease of evidence favors transfer. Again, we understand petitioner's characterization of this suit as a corporate negligence case. And, we acknowledge that perhaps some of respondents' corporate executives or higher-level employees who may be able to provide evidence germane to the instant cause are located in Cook County. However,

it cannot be denied that Hibbler's actions and Paris' medical condition and treatment will necessarily take a prominent position on the legal stage along with respondents' employment policies as this cause proceeds.  This is true for many reasons.  First, petitioner herself in her very complaint consistently refers to the negligent acts and omissions of Hibbler in monitoring Paris' ventilator as "the cause" of Paris' death.  Clearly, what happened on the night of the incident, which directly involved Hibbler, a 76-year-old Mississippi resident, will be critical.  Next, petitioner admits she hired Hibbler through Oxford, which operates and has its primary office in Mississippi.  Also, she repeatedly references Hibbler's "request" for reassignment and its alleged refusal as an additional reason for Paris' death.  With the connection between respondents, and Oxford as bound therein, still an open question, particularly as to the management of employees and employment policies, it is safe to say evidence with respect to both Oxford and, again, Hibbler (*i.e.*, whom she spoke to, what her request was, was it honored, etc.) will be fundamental components of this litigation.  Moreover, it would be incredulous to think that, if this cause continues to advance, Paris' medical care, both prior to the specific incident at issue and in response to it, will not be of great importance, as well.  Paris was treated from birth for the condition that, directly or indirectly, led to her death, first by doctors at Merit Health Northwest Hospital in Mississippi, next by doctors a LeBonheur Children's Hospital in Tennessee, then at home (again in Mississippi) by the many Oxford home health care nurses who rotated on a daily basis as evidenced by the supplemental record, and finally, again, by doctors at LeBonheur.  In addition, the ventilator that Paris used on the night of incident was located at her home in Mississippi, she was rendered emergency aid by paramedics in Mississippi, and she was

transported first to a hospital in Mississippi and then one in Tennessee, where she died. Taking into account all these considerations, it was in no way unreasonable for the trial court to conclude that the relative ease of evidence factor favors a Mississippi forum in this cause.

¶ 42     With respect to the remaining private forum factor of other practical problems that make trial easy, expeditious and inexpensive, petitioner asserts that the trial court "did not duly weigh" each of the considerations involved (specifically, the compulsory process of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, and viewing the premises) before concluding they favored transfer, which "[n]o reasonable person based on the record would have found." However, after reviewing the court's separate and thorough analysis of each of these considerations, we disagree.

¶ 43     Regarding the compulsory process of unwilling witnesses, the court noted that should the need to compel the testimony of a witness arise, Illinois, Mississippi and Tennessee have all adopted the Uniform Interstate Depositions and Discovery Act, so the process of doing so would largely be the same whether the cause remains in Cook County or is transferred; yet, the fact more of the potential witnesses in the matter are located closer to Mississippi, this consideration tipped toward favoring transfer. We do not find this determination amounted to an abuse of discretion. Petitioner claims that the court incorrectly substituted the same considerations it used to determine the ease of access factor to this one and speculated as to potential witnesses. However, simply because the court applied similar reasoning gleaned from one factor to another does not mean that it did not afford each factor its own weight under the circumstances. Besides, the court did not mention the Uniform Interstate Depositions and Discovery Act when addressing the ease of access factor, clearly

23

demonstrating that it did, indeed, weigh the compulsory process factor somewhat differently. Additionally, while petitioner cites case law stating that courts are not to speculate about a witness' unwillingness to testify at trial where potential witnesses have yet to be identified, "we know of no rule that bars a trial court from inferring the relative convenience of alternative forums, based on its knowledge of their residence and workplace." *Koss Corp.*, 2012 IL App (1st) 120379, ¶ 106, ¶¶ 107-08 (holding that trial court did not abuse its discretion where it considered the inconvenience of forum transfer to witnesses residing in Wisconsin who might testify but were not yet named at point of forum motion, since "[o]ur supreme court has held that it is not necessary for 'defendants seeking *forum non conveniens* dismissal [to] submit affidavits identifying the witnesses they would call and the testimony they would provide if the trial were held in the alternate forum.' " (Quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258-59 (1981))).

¶ 44     Next, regarding the cost of obtaining the attendance of willing witnesses, petitioner claims the trial court erred in finding this consideration favored transfer because the advent of video conferencing and technology can be used to cut said cost. This is true; the trial court acknowledged this in its decision, and our court has often done so as well. See *Ruch*, 2015 IL App (1st) 142972, ¶ 61 (due to advancements in technology, "this factor is much less significant than it used to be"). However, petitioner's argument is a double-edged sword, as costs can be cut in this regard on both sides. Additionally, the court also reflected, again, on the convenience to the parties and the relative ease of access to evidence, finding that Mississippi "appears to be a more convenient forum for the potential witnesses identified so far" when it comes to the cost of obtaining their attendance. Though consideration of this

factor may be less significant today, it does not deserve zero consideration, and the consideration the court here gave it was not at all an abuse of discretion.

¶ 45    Finally, regarding the viewing of the premises, petitioner claims the court erred in determining this favored transfer since this is a corporate negligence case and the premises where Paris suffered the injury "are immaterial." However, as the trial court pointed out, our supreme court has repeatedly acknowledged that the possibility of having a jury viewing the premises of an injury "is an important consideration in ruling on a *forum* motion." *Fennell*, 2012 IL 113812, ¶ 37; *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80 (1983). Moreover, this has nothing to do with the necessity or likelihood of viewing the premises but, rather, simply the possibility of doing so, and this consideration is left most specifically to the discretion of the trial court. See *Ruch*, 2015 IL App (1st) 142972, ¶ 70. While it may eventually prove true that there is no need for a jury to visit Paris' home to decide this case, the court was not required to make that determination during this forum motion. It was only required to consider the possibility of it, and it found it would be unreasonable to ask a Cook County jury to travel to Mississippi to do so, should the need arise. Based on the circumstances, we do not find this to be improper.

¶ 46    We now turn to the public interest factors. Instead of addressing these separately or specifically, petitioner asserts only that this cause of action "has significant connections to Illinois" and, therefore, there is "a paramount interest in deciding the controversy locally." Her argument, which appears at the end of her brief on appeal, is cursory and relatively scant of support. While we understand petitioner's argument and we do not discount that there is a connection between this cause and Illinois, we cannot forget that the essence of a *forum non*

25

*conveniens* motion, as we mentioned at the outset herein, is not a question of whether one proposed forum has proper and legal jurisdiction and the other does not; rather, the question is which one of two proper forums both possessing legal jurisdiction is better suited to hear the matter. See *Fennell*, 2012 IL 113812, ¶ 12; *Ruch*, 2015 IL App (1st) 142972, ¶ 37. In the instant cause, the trial court determined the first public interest factor of deciding localized controversies locally favored transfer, as a Mississippi decedent's physical injury took place in Mississippi. While one of the several corporations involved in the suit maintains an office in Chicago and makes this jurisdiction a legally proper one, that the court found the also-proper jurisdiction of Mississippi was more appropriate for the reasons it stated was not unreasonable, especially in light of all the circumstances presented. Additionally, and again, this suit involves a Mississippi resident suing on behalf of another Mississippi resident for the effects an incident had on her as her daughter, and it cannot be denied that it is based on claims of negligence not only concerning employment decisions potentially made in Cook County but also, as specifically alleged by petitioner herself in her amended complaint, claims of negligence concerning the specific actions of Hibbler, a Mississippi resident hired through Oxford, a company doing business in Mississippi.

¶ 47      With this in mind, the trial court found that the next public interest factor, the unfairness of imposing expense and burden on a county with little connection to the litigation, also weighed in favor of transfer. The court did recognize that "Cook County residents have some interest in the controversy given" that Help At Home does have a Chicago office, but it considered all the circumstances involved to conclude "as a whole this factor favors transfer." Clearly, the court thoughtfully examined the connection this litigation has with

26

each of these two forums, along with the fairness of imposing it on one as opposed to the other. That the court determined these considerations, on the whole, favored Mississippi, is not at all illogical.

¶ 48 The final public interest factor is the administrative difficulties caused by adding litigation to already congested court dockets rather than resolving the case at its origin. In the instant cause, the trial court found this factor to be neutral, since neither Mississippi nor Tennessee publish the same data regarding court congestion in their jurisdictions as does Illinois. Obviously, in determining that "a direct comparison * * * is not possible in this case," the court properly found this factor to be neutral.

¶ 49 Accordingly, with the trial court having found, via thorough and proper examination, that two of the three public interest factors supported transfer, we cannot conclude, in light of the record before us, that no reasonable person would adopt the same reasoning. Just as with the private interest factors, the trial court did not abuse its discretion. Rather, the court properly conducted the balance test of private and public interest factors while clearly affording petitioner's choice of forum some deference, as it was required to do under the circumstances presented. The pendulum of the *forum non conveniens* test simply swung in a direction petitioner was not expecting.

¶ 50 Petitioner concludes her brief on appeal by stating, ultimately, that the trial court erred in finding that respondents carried their burden of demonstrating that this cause should be transferred. We are mindful of the fact that a defendant is not relieved of its burden to show that the chosen forum is inconvenient to it and another is more convenient to all the parties simply because the chosen venue has little or no connection to the cause. See *Dykstra v. A.P.*

27

*Green Industries, Inc.*, 326 Ill. App. 3d 489, 496 (2001).  But we believe, just as the trial court here did, that respondents did make this showing based on the evidence presented, which we have already discussed at length.  See *Koss Corp.*, 2012 IL App (1st) 120379, ¶¶ 106-07 (trial court may make inferences in this regard based on evidence presented).  In the end, when all of the relevant private and public interest factors are viewed in their totality, they strongly favor transfer to Mississippi, which can better serve the convenience of the parties and the ends of justice with respect to the instant cause.  We therefore find that the trial court did not abuse its discretion in granting respondents' motion to transfer pursuant to *forum non conveniens.*

¶ 51                                   CONCLUSION

¶ 52        Accordingly, for all the foregoing reasons, we affirm the judgement of the trial court.

¶ 53        Affirmed.